**MDM INVESTMENTS, Appellants–Movant Below,**

v.

**CITY OF CARMEL, Indiana, Appellee–Plaintiff Below,**

and

**Carlsbad Construction Company, Carlsbad Building Company, Robert W. Brenton, Community Bank, FSB, Safeco, Inc., Castleton Lumber Co., Inc., and Blair Window Products, Inc., Defendants Below.**

No. 29A02–9912–CV–834.

Court of Appeals of Indiana.

Dec. 21, 2000.

---

Michael D. Ramsey, Johnson, Smith, Pence & Heath, Indianapolis, Indiana, Attorney for Appellant.

Christopher L. Riegler, Robert A. Hicks, Letha S. Kramer, Hall, Render, Killian, Heath & Lyman, Indianapolis, Indiana, Attorneys for Appellee City of Carmel.

**OPINION**

SULLIVAN, Judge

Appellant, MDM Investments (MDM), appeals the trial court's order denying its motion to reopen condemnation proceedings initiated by appellee, the City of Carmel (City). In particular, MDM contends that the City was statutorily required to amend the condemnation complaint during the condemnation proceedings for a right-of-way to name MDM as an owner, once it learned of MDM's status as a subsequent purchaser. MDM further contends that even if the City was not required to amend the complaint, at a minimum the City was required to provide MDM, a known party, with notice of the valuation process.

We affirm.

On January 27, 1998, the City, pursuant to its eminent domain powers, initiated proceedings to condemn property owned by Carlsbad Construction Company[1] (Carlsbad). After unsuccessfully attempting to purchase the property, the City filed a condemnation complaint, naming Carlsbad as owner of the property. That same day, the City filed in the Hamilton County Superior Court a lis pendens notice indicating that condemnation proceedings had been initiated against the property. The following day, the City sent a copy of the summons and complaint by certified mail to all named parties, including Carlsbad and Brenton. The summons informed the parties to appear in the Hamilton Superior Court No. 1 on February 25, 1998, to show cause why the property in question should not be appropriated. Although the summonses sent to Carlsbad and Brenton were returned unsigned and marked "not deliverable," the City later obtained service upon them by alias summons on February 20, 1998. Record at 34, 35, 40.

---

1. The record reveals that Carlsbad Building Company, c/o Robert Brenton, and Robert Brenton, individually, also received formal notice of the proceedings, although it is not entirely clear what interest they held in the property. The complaint does reveal, however, that Carlsbad Construction Company is an assumed business name of Robert Brenton.

While the City was attempting service upon Carlsbad and Brenton, MDM purchased the property at a sheriff's sale in connection with a mortgage foreclosure on January 30, 1998, three days after the condemnation complaint was filed. On February 6, 1998, the City's attorney sent Marshall Welton, who was purportedly acting on behalf of MDM, a letter, informing him that the City was in the process of condemning a strip of land on the north end of the property. Included in the letter was a copy of the condemnation complaint and a proposal to purchase the property for $14,630. The letter specifically provided, however, that the offer was contingent upon MDM providing proof of ownership.

What happened next is disputed. MDM contends that upon receiving the letter, Welton contacted the City's attorney and asked him what MDM needed to do to preserve its rights to the property. Allegedly, the City's attorney advised Welton "not to worry," that he need not attend the condemnation hearing and that the City would "handle" the issues related to the condemnation. Record at 109. The City, by its attorney, claims that the City never received a response to the February 6, 1998 letter, but eventually spoke to an unidentified individual, allegedly representing MDM, and told him that a hearing was to be held. The City's attorney specifically denied telling MDM's agent not to worry about the hearing. No one from MDM made an appearance at the condemnation hearing.

On March 23, 1998, the City filed a Motion to Appoint Appraisers which was granted by the court on March 31, 1998. On April 30, 1998, the appraisers filed their report, valuing the property at $4,000. The trial court entered an order accepting the appraisers' report on May 7, 1998, and on July 14, 1998, Carmel filed a Motion for Order of Appropriation which was also granted by the trial court. Although Carlsbad continued to receive notice of the appraisers' report and the court's order transferring the property to the City, MDM did not.

Sometime later, MDM discovered that the right-of-way had been appropriated to the City. As a result, on August 25, 1999, MDM filed a Motion to Reopen Proceedings and Notice of Exceptions to Appraiser's Report. The trial court denied MDM's motion and MDM now appeals.

As stated in *Lehnen v. State* (1998) Ind. App., 693 N.E.2d 580, 582, *trans. denied:* "Eminent domain proceedings are statutory, and where the statute fixes a definite procedure it must be followed." Because MDM's argument is based upon the eminent domain statute set forth at I.C. 32–11–1–1 *et seq.* (Burns Code Ed. Repl. 1995), we briefly summarize those provisions. A party seeking to exercise its eminent domain powers must make an effort to purchase the property for its intended use. I.C. 32–11–1–1(b); I.C. 32–11–1–2.1. If the condemnor and the owner cannot agree upon a purchase price, the condemnor may file a complaint with the clerk of the circuit court of the county where the land is situated. I.C. 32–11–1–2. The complaint must include among other things "[t]he names of all owners, claimants and holders of liens on the property or right, if known, or a statement that they are unknown, who shall be styled defendants." I.C. 32–11–1–2(2). "Upon the filing of such complaint the clerk shall issue a notice requiring the defendants to appear before said court ... on the day to be fixed by the plaintiff by indorsement on the complaint at the time of filing said complaint, and to show cause, if any, why the property sought to be condemned should not be appropriated." I.C. 32–11–1–3(a). The notice must be served in "the same manner as a summons is served in civil actions." I.C. 32–11–1–3(b). Defendants are then afforded an opportunity to file objections to the condemnation. I.C. 32–11–1–5. If no objections are filed or any objections made are overruled, the trial court appoints appraisers to assess the value of the property. I.C. 32–11–1–5.

Once the appraisers' report is filed, "[n]otice of filing of the appraisers' report shall be given by the clerk of the court to all known parties to the action and their attorneys of record by certified mail." I.C. 32–11–1–8. A party aggrieved by the assessment may file written exceptions twenty (20) days after the filing of the report. I.C. 32–11–1–8. If no exceptions are filed and the party seeking condemnation pays the amount assessed into the clerk of the court, the auditor transfers the property to the condemnor. I.C. 32–11–1–7. When the City filed its condemnation complaint on January 27, 1998, MDM was not the record owner of the property, as the sheriff's sale did not occur until January 30, 1998. Pointing to its status as a subsequent owner, MDM contends that the City should have amended its complaint to include MDM after it purchased the property. MDM asserts that because the City had knowledge of MDM's status as owner as of February 6, 1998, its failure to amend the complaint violated Section 2's requirement that all owners receive notice of the proceedings. MDM further contends that even if the City was not statutorily obligated to amend its complaint to include MDM, the City, at least, should have provided MDM with notice of the appraisers' report so that it had an opportunity to contest the valuation of the property. In support of its contention, MDM observes that condemnation actions are bifurcated, consisting of an appropriation and a valuation stage, and Section 8 specifically requires that notice of the appraisers' report be sent to "all known parties to the action." Thus, MDM contends it should have received notice of the appraisers' report and because it did not, the twenty-day period for filing exceptions to the appraisers' report was extended indefinitely.

■ Initially, we note our standard of review. The nature of MDM's "Motion to Reopen Proceedings and Notice of Exceptions to Appraiser's Report" is not readily apparent. While substantively the motion seeks to "reopen" the valuation proceedings to enable MDM to contest the appraisers' report, it does not refer to a particular trial rule. It appears, however, that the trial court, in concluding that "MDM has given no reason for this Court to set aside a valid, final judgment," treated MDM's motion as a motion to set aside the judgment under Ind. Trial Rule 60. Record at 144. This court has indicated its preference to place substance over form. *See Town of St. John v. Home Builders Ass'n of Northern Indiana, Inc.* (1981) Ind.App., 428 N.E.2d 1299, 1302 (determining that although party labeled a motion as a "motion to reconsider," it would be treated as a T.R. 60 motion because substantively it met the requirements of a T.R. 60 motion), *trans. denied.* Therefore, we agree with the trial court's treatment of the motion. We further note that because T.R. 60 provides only "a party"[2] relief from judgment, MDM's motion was also a request to intervene under Ind. Trial Rule 24 for purposes of filing the T.R. 60 motion. *See* T.R. 60(B) ("On motion and upon such terms as are just the court may relieve *a party* … from … final order, or final judgment ….") (emphasis supplied); *Greenfield v. Greenfield* (1992) Ind.App., 591 N.E.2d 1057, 1059 (noting that trial court did not have authority under T.R. 60 to set aside a judgment and reinstate a dissolution action where petitioners were not original parties to the dissolution action and did not file appropriate motions to become parties to the action), *trans. denied;* T.R. 24(C) (allowing for intervention "after trial or after judgment for purposes of a motion under Rules 50, 59, or 60 ….."). Thus, we will review the denial of MDM's motion as a denial of a motion to set aside a judgment. Moreover, for purposes of this appeal, we will assume without deciding that the motion was properly and timely filed with

---

**2.** MDM was not a named party to the action and there is no evidence of record that MDM intervened.

respect to the date of the judgment sought to be set aside. Upon appeal, we review the trial court's decision for an abuse of discretion. *Lehnen, supra,* 693 N.E.2d at 581. We will reverse only if the decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

### I. *Statutory Duty to Amend Complaint*

■ MDM's first contention pertains to the City's alleged statutory duty to amend its complaint to include MDM as a named party to the action. Specifically, MDM contends that once the City discovered that MDM purchased the property, the City was statutorily required to amend the complaint, and that in failing to do so, the City violated Section 2's requirement that all owners of the property receive notice of the proceedings.

■ As stated above, condemnation proceedings are governed by statute. *Lehnen, supra,* 693 N.E.2d at 582. Thus, to address MDM's contentions, we must apply our rules of statutory interpretation. *Calumet Nat. Bank v. American Tel. and Tel. Co.* (1995) Ind.App., 647 N.E.2d 689, 691, *trans. denied.*

> "When interpreting a statute, the foremost objective is to determine and effect legislative intent. Statutes must be construed to give effect to legislative intent, and courts must give deference to such intent whenever possible. Thus, courts must consider the goals of the statute and the reasons and policy underlying the statute's enactment. Courts are to examine and interpret a statute as a whole, giving words their common and ordinary meaning, and not overemphasize a strict, literal, or selective reading of individual words. Words and phrases are taken in their plain, ordinary, and usual meaning unless a different purpose is manifested by the statute.

> Where possible, every word must be given effect and meaning, and no part is to be held meaningless if it can be reconciled with the rest of the statute." *JKB, Sr. v. Armour Pharmaceutical Co.* (1996) Ind.App., 660 N.E.2d 602, 605, *trans. denied* (citations omitted).

■ "The meaning and intention of the legislature are to be ascertained not only from the phraseology of the statute but also by considering its nature, design, and the consequences which flow from the reasonable alternative interpretations of the statute." *In re Visitation of J.P.H.* (1999) Ind.App., 709 N.E.2d 44, 46.

■ As MDM contends, Section 2 requires a party seeking to condemn property to include in the complaint "[t]he names of all owners, claimants and holders of liens on the property or right, if known . . . ." I.C. 32–11–1–2(2). However, Section 2 does not contain language requiring a condemnor to amend the complaint upon learning of a subsequent purchaser. In fact, the statute contains language indicating the contrary. Section 2 also provides that the "filing of the complaint shall constitute notice of proceedings to *all subsequent purchasers* and persons taking encumbrances of the property, who shall be bound by the notice." (emphasis supplied). Based upon the plain language of the statute, it appears that the legislature intended that only those record owners, as of the date of the filing of the complaint, receive a copy of the summons and complaint. It is equally clear that by using the term "all," the legislature intended that any person who purchases property after the complaint is filed be placed on notice by the filing of the complaint. This, of course, presupposes that the subject matter of the complaint is referenced in some record pertaining to that real estate, *i.e.,* lis pendens.[3] Thus, while the City could

---

**3.** While the statute provides that the "filing of the complaint shall constitute notice of proceedings to all subsequent purchasers," case law has established that filing a lis pendens provides constructive notice to all subsequent purchasers that a claim is pending against the property. *See State v. Cox* (1978) 177 Ind. App. 47, 52, 377 N.E.2d 1389, 1392, *trans.*

have elected to amend its complaint to include MDM when it learned of MDM's status as a subsequent purchaser, it was not required to do so under the statute.

## II. Duty to Provide Notice of the Valuation Process to Known Defendants

▆ MDM further contends that even if the City was not required to amend the complaint to include MDM, it should have provided it with notice of the appraisers' report so that MDM had an opportunity to challenge the valuation of the property. MDM suggests that because the valuation stage is separate from the appropriation stage and Section 8 requires that "all known parties to the action" receive notice of the appraisers' report, subsequent purchasers, who are not named parties but who are known to the condemnor, should receive notice of the appraisers' report. MDM also suggests that by using the term "known parties to the action," instead of "defendants" as used in Section 3, the legislature must have intended to include subsequent owners of which the City has notice in the valuation process. See I.C. 32–11–1–3(a) ("Upon the filing of such complaint the clerk shall issue a notice requiring the *defendants* to appear before said court ... on the day to be fixed by the plaintiff by indorsement on the complaint at the time of filing said complaint, and to show cause, if any, why the property sought to be condemned should not be appropriated.") (emphasis supplied). Finally, MDM contends that the City should have conducted a second title search prior to the commencement of the valuation proceedings.

▆▆ We initially note that an essential purpose of the eminent domain statute is to ensure that a landowner receive reasonable compensation for property which is appropriated. *Unger v. Indiana & Michigan Elec. Co.* (1981) Ind.App., 420 N.E.2d 1250, 1257. Additionally, we agree that the valuation stage is separate and distinct from the appropriation stage and that notice to the parties is required prior to each stage. *See Cordill v. City of Indianapolis Through Dep't of Parks and Recreation* (1976) 168 Ind.App. 685, 694, 345 N.E.2d 274, 279 (Sullivan, J., dissenting), *trans. denied.* Nonetheless, there is no support in the language of the statute for MDM's contention that notice of the appraisers' report be sent to subsequent purchasers or that a second title search be conducted prior to the valuation stage.

▆ In attempting to decipher the meaning of the phrase "known parties to the action," we may not consider any individual word apart from the rest of the statute. *See State v. CSX Transp., Inc.* (1996) Ind.App., 673 N.E.2d 517, 519 ("When interpreting the words of a single section of a statute, this court must construe them with due regard for all other sections of the act and with regard for the legislative intent to carry out the spirit and purpose of the act."); *Johnson County Farm Bureau Co-op. Ass'n, Inc. v. Indiana Dep't of State Revenue* (1991) Ind. Tax, 568 N.E.2d 578, 581 ("Since words that have one meaning in a particular context frequently have a different meaning in another context, it is necessary to consider the context to determine the significance of the words used in a statute."), *affirmed and adopted by Indiana Dep't of State Revenue v. Johnson County Farm Bureau Co-op. Ass'n, Inc.* (1992) Ind., 585 N.E.2d 1336; *Scheid v. State Bd. of Tax Comm'rs* (1990) Ind.Tax, 560 N.E.2d 1283, 1286

denied; *Cleveland, C., C. & St. L. Ry. Co. v. Beck* (1923) 84 Ind.App. 380, 393–95, 139 N.E. 705, 709–10, *trans. denied. See also* I.C. 34–34–1–3 (Burns Code Ed. Repl. 1998); *Mid–West Fed. Sav. Bank v. Kerlin* (1996) Ind. App., 672 N.E.2d 82, 86, *trans. denied.* If a lis pendens notice is properly filed on the public records, a subsequent purchaser will take the property subject to a judgment in the pending claim. *Mid–West, supra* at 86; 51 Am.Jur.2d *Lis Pendens* § 2 (2000). To protect an interest in the property, the subsequent purchaser may either ensure that the grantor does not harm his rights or intervene in the action. 51 Am.Jur.2d *Lis Pendens* § 2.

(concluding that legislative intent determined from the language of a statute will prevail over the strict literal meaning of any word used). Section 2, which states who must be included in the condemnation complaint, provides guidance in that interpretation. That section makes reference to "known" and "unknown" parties and, in particular, provides that "[t]he complaint shall state ... [t]he names of all owners, claimants and holders of liens on the property or right, if *known*, or a statement that they are *unknown*, who shall be styled defendants." (emphasis supplied).[4] By using the terms known and unknown, the legislature was able to distinguish between those parties who must be and those who cannot be specifically named in the complaint. When Section 2 is read in conjunction with Section 8, it appears that in referring to "known parties" in Section 8, the legislature was merely identifying the same "known" parties listed in Section 2, or those owners, claimants and holders of liens who were named in the original complaint. The language which modifies the phrase "known parties" also must be considered. Section 8 provides that "known parties *to the action*" receive notice of the appraisers' report (emphasis supplied). This qualificative language indicates that a party entitled to notice of the appraisers' report is someone who has already been involved in the action, either as a named party or a subsequent purchaser who has intervened.[5] Finally, the phrase "known parties" in Section 8 must be construed with the language in Section 2 which pro-vides that "[t]he filing of the complaint shall constitute notice of proceedings to all subsequent purchasers and persons taking encumbrances of the property, who shall be bound by the notice." I.C. 32–11–1–2. The legislature could have qualified this statement by requiring that the complaint serve as notice for only the appropriation proceedings and not the valuation proceedings; the legislature did not. Thus, while it is clear the legislature intended that known parties receive notice at both the appropriation and the valuation stage, there is no indication that the legislature intended "known parties to the action" to include subsequent purchasers; nor does the statute contemplate requiring a condemnor to conduct a second title search prior to the valuation stage. Rather, the valuation stage, while separate from the appropriation stage, is a continuation of the same proceeding. *See Lehnen, supra,* 693 N.E.2d at 583 (noting that because valuation stage is continuation of the appropriation stage, notice of appraisers' report need not comply with constitutional requirements of due process). It further appears that the legislature's intent in using the phrase "known parties" was to ensure that parties, who elect not to challenge the appropriation of the land, are able to participate in the valuation process. *See Cordill, supra,* 168 Ind.App. at 694, 345 N.E.2d at 279 ("[I.C. 32–11–1–8] now guarantees a landowner an opportunity to be heard with respect to the damages due him for the land appropriated even though he has chosen not to contest the right of

---

4. The designation "unknown" clearly contemplates that that person is a known owner, claimant or lien holder but that his identity is unknown.

5. MDM relies upon *Cordill, supra,* 168 Ind. App. 685, 345 N.E.2d 274, for the proposition that a "known party" is any party who is known to the City but who has not entered an appearance with the court. In *Cordill,* a panel of this court, while addressing an issue concerning a prior version of the eminent domain statute, acknowledged that Section 8 had since been amended to reflect the current version. In particular, the majority noted that under the amended section, a "known party," as opposed to an attorney of record, would be entitled to notice of the appraisers' report even if that party or his attorney had not filed an appearance. Thus, the *Cordill* court was emphasizing the legislature's intent to provide a named party with notice of the appraisers' report in the case where that party's attorney had not entered a formal appearance with the court. There is no evidence, however, that the landowner in *Cordill* was a subsequent purchaser or was not named in the original complaint. Therefore, MDM's reliance upon *Cordill* is misplaced.

the condemnor to appropriate the land.") (Sullivan, J., dissenting). Having considered the statute as a whole, we conclude that the legislature did not contemplate requiring a condemnor to amend its complaint to include subsequent purchasers or to provide them notice when they have not intervened in the action. Thus, the trial court did not abuse its discretion by denying MDM's motion to set aside the judgment.

The judgment is affirmed.

BAILEY and VAIDIK, JJ., concur.