LAKE CENTRAL SCHOOL CORPORATION, an Indiana Political Subdivision, Margaret Clark, John Devries, Nancy Grey, Howard Marshall, Jr., and Deborah Phelps, in their capacity as members of the Board of Trustees of Lake Central School Corporation, Appellants–Plaintiffs,

v.

HAWK DEVELOPMENT CORPORATION, James W. Hawk, Tim Fetsch Townhomes, LLC, Chicago Title Insurance Company, a Missouri Corporation, Ticor Title Insurance Company, Bank Calumet National Corporation, Fifth Third Bank, Appellees–Defendant.

No. 45A03–0209–CV–310.

Court of Appeals of Indiana.

Aug. 20, 2003.

George T. Patton, Jr., Alan S. Townsend, Bryan H. Babb, Bose McKinney &
Evans LLP, Indianapolis, IN, Attorneys

for Appellants Lake Central School Corp., et al.

Michael J. Lewinski, Hilary G. Buttrick, Ice Miller, Indianapolis, IN, Attorneys for Amicus Curiae Indiana Association of Cities and Towns.

Julie M. Slavens, Indiana School Boards Association, Indianapolis, IN, Attorney for Amicus Curiae Indiana School Boards Association.

Mark A. Voigtmann, Shiv Ghuman O'Neill, Baker & Daniels, Indianapolis, IN, Attorneys for Appellees Chicago Title Insurance Company and Ticor Title Insurance Company.

Rebecca Hoyt Fischer, Lewis C. Laderer, Laderer & Fischer, P.C., South Bend, IN, Attorneys for Appellee Bank Calumet National Association.

Nick Katich, Lucas, Holcomb & Medrea, Merrillville, IN, Attorney for Appellee Fifth Third Bank.

A. Donald Wiles, II, Harrison & Moberly, LLP, Indianapolis, IN, Attorney for Amicus Curiae Indiana Land Title Association.

**OPINION**

BAKER, Judge.

In this interlocutory appeal we have been asked to hold that Lake Central School Corporation was required to file a lis pendens notice in order to extinguish any rights in the condemned property held by a subsequent purchaser (Fetsch Townhomes) and encumbrancers (Bank Calumet and Fifth Third Bank). The Eminent Domain Act [1] does not require the filing of a lis pendens, and, despite some dicta, no Indiana appellate opinion has held that a condemnor must file a lis pendens in order to cut off the property rights of subsequent purchasers and encumbrancers. Although filing a lis pendens would relieve subsequent purchasers and encumbrancers of significant costs with little burden to a condemnor, such a decision should be left to the judgment of the General Assembly. Therefore, we reverse the trial court's grant of summary judgment in favor of the appellees and remand for entry of summary judgment in favor of Lake Central.

*FACTS*

Lake Central wanted real estate to build another elementary school in Lake County. In 1999 Lake Central offered to purchase a thirty-acre parcel from Hawk Development. The developer refused, prompting Lake Central's complaint for condemnation in October 1999. Hawk Development contested the condemnation action.

During the early part of 2000 while the condemnation action was still pending, Hawk Development sought to subdivide the property into what later became known as the Fox Chase Subdivision. The Lake County Plan Commission approved of Hawk Development's proposed subdivision despite Lake Central's objections at commission meetings. On October 5, 2000, Hawk Development obtained a $1,000,000 loan from Bank Calumet, which was secured by a mortgage on the subject property. Hawk Development did not inform Bank Calumet about Lake Central's pending condemnation action. At the time of the closing on the loan, Bank Calumet obtained a title commitment from Ticor Title Insurance Company demonstrating clear title in the subject property.

Thereafter, Hawk Development subdivided the property into forty-seven lots.

---

[1]. When Lake Central filed its condemnation complaint, the Eminent Domain Act was codified at Indiana Code Ann. sections 32–11–1–1 to –11 (Michie 1995). The Eminent Domain Act is currently at Indiana Code Ann. sections 32–24–1–1 to –17 (West 2002).

Fetsch Townhomes purchased six of the lots. The purchase by Fetsch Townhomes was financed through a loan from Fifth Third Bank, which loan was secured by a mortgage. At the time of the purchase, Fetsch Townhomes also obtained a title commitment from Chicago Title Insurance Company subsequently insuring clear title in Lots 1 through 6 of the thirty-acre parcel. Bank Calumet had since released its mortgage on those six lots.

Chicago Title and Ticor Title are owned by a single parent company known as Fidelity National Title Insurance. Both title companies prepared title insurance commitments during the relevant period by searching a "title plant" of information collected by a third party known as Security Union. Appellants' App. p. 141. Security Union updated the title plant by sending court runners, who would "go down to the clerk's office every day and search the new cases, the judgment docket and the lis pendens docket." Appellants' App. p. 258. Security Union's court runners did not locate Lake Central's condemnation complaint. It attributed the failure to "confusion" surrounding Lake County's transition to a new electronic system. Tr. p. 38.

During a period from November 2000 until June 2001 and after significant discovery, Hawk Development continued its objection to the condemnation action. On June 5, 2001, the trial court entered its Order of Appropriation and Appointment of Appraisers in favor of Lake Central. On July 24, 2001, the appointed appraisers filed their report, which valued the subject property at $663,000. One week after the appraisers filed their report, Lake Central filed its Certificate of Payment of Assessed damages and tendered a check in the amount of $663,000 to the Clerk of the Lake Superior Court. The trial court, in turn, entered an order of immediate pos-

session. After meeting with Fetsch Townhomes, Lake Central secured the property.

Soon thereafter, Fetsch Townhomes, Bank Calumet, and Fifth Third Bank sought and were granted leave to intervene in Lake Central's condemnation action. At various times during the early months of 2002, Fetsch Townhomes, Bank Calumet, and Fifth Third Bank moved for summary judgment on the basis that the order of immediate possession could not operate to foreclose or condemn their respective rights in the property. Chicago Title and Ticor Title also intervened in the instant action and joined in the summary judgment motion filed by the other intervenors. In addition, the two title companies submitted a separate joint motion for summary judgment. Lake Central, in response, filed a brief in opposition to the intervenors' summary judgment motion and filed its own cross-motion for summary judgment. Concluding that Lake Central was required to file a lis pendens notice in addition to its condemnation complaint and finding that the school corporation failed to file such notice, the trial court granted summary judgment in favor of the intervenors and against Lake Central. Lake Central now brings this interlocutory appeal.

## DISCUSSION AND DECISION

### I. Standard of Review

Summary judgment is proper if the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *State Farm Fire & Cas. Co. v. T.B. ex rel. Bruce*, 762 N.E.2d 1227, 1230 (Ind.2002). The courts construe all facts and reasonable inferences drawn from those facts in a light most favorable to the nonmoving party. *T.B. ex rel. Bruce*, 762 N.E.2d at 1230. On appeal from cross-motions for summary judg-

ment, the reviewing court considers each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Lake States Ins. Co. v. Tech Tools, Inc.,* 743 N.E.2d 314, 318 (Ind. Ct.App.2001). When the relevant facts are not in dispute and interpretation of a statute is at issue, such statutory interpretation "presents a pure question of law for which disposition by summary judgment is particularly appropriate." *Koppin v. Strode,* 761 N.E.2d 455, 460 (Ind.Ct.App. 2002). Where the issue presented on appeal is a pure question of law, we review the matter de novo. *Bader v. Johnson,* 732 N.E.2d 1212, 1216 (Ind.2000).

### II. *Eminent Domain Act and Constructive Notice*

 Fetsch Townhomes purchased a portion of the subject property from Hawk Development after Lake Central had filed its condemnation complaint. Likewise, Bank Calumet and Fifth Third Bank encumbered the property through mortgages after the filing of the condemnation complaint. Accordingly, we must decide whether the filing of the condemnation complaint alone was sufficient under Indiana statutory law to notify those parties of Lake Central's interest in the property. Indiana statutory law states that filing the condemnation complaint is sufficient to notify subsequent purchasers and encumbrancers of a condemnation action. In other words, a condemnor's filing of a lis pendens is not required by Indiana statutory law to put subsequent purchasers and encumbrancers on notice.

During the period relevant to Lake Central's condemnation action, the procedures for the commencement and maintenance of a condemnation action were located in Indiana Code Ann. sections 32–11–1–1 to – 11 (Michie 1995). Such procedures are for the use of "[a]ny person, corporation or other body having the right to exercise the power of eminent domain for any public use, under any statute, existing or enacted after April 15, 1905." Ind.Code Ann. § 32–1–1–1(a) (Michie 1995). The eminent domain power is to be exercised "only in the manner provided in" the Act. *Id.* More specifically, the procedure for notifying subsequent purchasers and encumbrancers is set forth in Indiana Code Ann. section 32–11–1–2 (Michie 1995). That statute provides in part: "The filing of the complaint shall constitute notice of proceedings to all subsequent purchasers and persons taking encumbrances of the property, who shall be bound by the notice." Ind.Code Ann. § 32–11–1–2 (Michie 1995). In a substantially similar form, this provision was first enacted in 1905.[2] Through the rest of the opinion, we will refer to this Act as the Eminent Domain Act.

Our General Assembly passed the Eminent Domain Act twenty-eight years after passage of the 1877 Lis Pendens Act. Under the Lis Pendens Act, "any person" seeking "to enforce any lien upon, right to or interest in any real estate" was required to file a "written notice" in the Lis Pendens Record. Act of Mar. 14, 1877, ch. 24, § 2, 1877 Ind. Acts Spec. Sess. 54. Filing a notice in the Lis Pendens Record would "operate as constructive notice of the pendency of such suits ... against bona fide purchasers or encumbrances" of the real estate. Act of Mar. 14, 1877, ch. 24, § 8, 1877 Ind. Acts Spec. Sess. 56. The 1877 Lis Pendens Act was codified in substantially similar form and appeared at Indiana Code Ann. sections 34–34–1–1 to –9 (West

---

**2.** At that time, the Eminent Domain Act stated in part: "The filing of such complaint shall constitute notice of such proceedings to all subsequent purchasers and encumbrances of the property, who shall be bound thereby." Act of Feb. 27, 1905, ch. 48, § 2, 1905 Ind. Acts 61.

Supp.1998–1999) during the period relevant to Lake Central's condemnation action.[3]

The dispute in Lake Central's condemnation action involves the requirements for giving constructive notice to subsequent purchasers and encumbrancers. Each Act states in unambiguous terms what action must be taken to give notice to subsequent purchasers and encumbrancers. Under the Eminent Domain Act, the filing of the condemnation complaint itself "shall constitute notice of proceedings to all subsequent purchasers and persons taking encumbrances of the property, who shall be bound by the notice." Ind.Code Ann. § 32–11–1–2 (Michie 1995). The filing of a complaint, however, is not sufficient notice to subsequent purchasers and encumbrancers according to the Lis Pendens Act. Rather, such actions to enforce an interest in real estate "do not" "have any force or effect as against bona fide purchasers or encumbrancers of the real estate" until a lis pendens notice is filed. Ind.Code Ann. § 34–34–1–9(b) (West Supp.1998–1999).

▪▪▪ When presented with an apparent conflict between two statutes—for example, what provides constructive notice to subsequent purchasers and encumbrancers of real estate—this court's role is to examine and harmonize them if possible. *Simmons v. State,* 773 N.E.2d 823, 826 (Ind.Ct. App.2002). We harmonize such statutes according to the following guidelines:

> As a general rule, there is a presumption that the Legislature in enacting a particular piece of legislation has in mind existing statutes covering the same subject. When two statutes or two sets of statutes are apparently inconsistent in some respects, and yet can be rational-

ized to give effect to both, then it is our duty to do so. It is only when there is irreconcilable conflict that we can interpret the legislative intent to be that one statute gives way to the other. Furthermore, the implied repeal of statutes is disfavored under Indiana law. We repeal statutes by implication only where a later statute is so repugnant to . and inconsistent with an earlier statute that it must be assumed the legislature did not intend both statutes to stand. If at all possible, we will adopt a construction that gives effect to both statutes.

*Id.* (citations and quotations omitted).

A comparison of the Lis Pendens and Eminent Domain Acts shows that the latter is more specific in its application. The Eminent Domain Act applies to "[a]ny person, corporation or other body having the right to exercise the power of eminent domain for any public use, under any statute, existing or enacted after April 15, 1905." Ind.Code Ann. § 32–11–1–1(a) (Michie 1995). On the other hand, the Lis Pendens Act speaks in general terms in reference to "a person" seeking "to enforce any lien upon, right to, or interest in any real estate." Ind.Code Ann. § 34–34–1–3(a) (West Supp.1998–1999).

As Lake Central demonstrated in its brief on appeal, the 1905 Eminent Domain Act is correctly viewed as an exception to the general rule requiring a lis pendens notice, which general rule was established by the 1877 Lis Pendens Act. The 1905 exception was really a partial reinstatement of the common-law rule that a pending lawsuit itself "is notice to a purchaser, so as to affect and bind his interest by the decree." *Green v. White,* 7 Blackf. 242, 244 (Ind.1844). The common-law rule was

---

**3.** The Lis Pendens Act is currently at Indiana Code Ann. sections 32–30–11–1 to –10 (West 2002).

developed to "prevent a greater mischief that would arise by people's purchasing a right under litigation." *Id.* To qualify as constructive notice under common law, there must have been "a suit pending, and the complaint in the suit must disclose the subject-matter of it." *Britz v. Johnson,* 65 Ind. 561, 563 (1879) (involving an action for real estate that had commenced in 1872, five years before the passage of the Lis Pendens Act). The 1905 Eminent Domain Act was a partial reinstatement of the commonlaw rule inasmuch it only applied to those plaintiffs lawfully exercising eminent domain power. Generally, all other plaintiffs were, and still are, bound by the 1877 Lis Pendens Act. Therefore, when taking into account whether the plaintiff is exercising eminent domain, the Eminent Domain and Lis Pendens Acts can be easily harmonized and given effect, and it is reasonable to conclude that the General Assembly intended to exempt condemnors from filing a lis pendens notice.

### III. Appellate Court Interpretation of Eminent Domain and Lis Pendens

#### A. Beck (1923)

The appellees contend that Indiana case law interpreting the Eminent Domain Act requires a condemnor to file a lis pendens notice to extinguish the interests of subsequent purchasers and encumbrancers. They mainly rely on three Indiana appellate cases, the earliest of which is *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. v. Beck,* 84 Ind.App. 380, 139 N.E. 705 (1923). In *Beck,* the Cleveland Railroad's predecessor in title, the Cincinnati, Wabash & Michigan Railroad began an action in 1888 against Beck's grantor to condemn an eighty-foot strip of land. *Id.* at 385, 139 N.E. at 707. Appraisers were appointed, they filed their report assessing damages, and the landowner filed exceptions to the report. *Id.* The venue was changed from Wabash County to Kosciusko County in 1891 where a final judgment was rendered in June 1902, which increased the damages owed Beck's grantor. *Id.*

When the railroad filed its condemnation complaint in 1888, it did not file a lis pendens notice. *Id.* at 386, 139 N.E. at 707. Until the change in venue, the only paper on file in Wabash County was the condemnation complaint and the appraisers' report. *Id.* When venue was changed all the papers in Wabash County were shifted to Kosciusko County. *Id.* Therefore, no record of any kind was left in Wabash County giving anyone notice of the pendency of the 1888 condemnation action or the land to be condemned. *Id.*

Eventually Cleveland Railroad filed an action for ejectment and to quiet title against Beck, a subsequent purchaser of the property. *Id.* at 382, 139 N.E. at 706. The trial court ruled in favor of Beck, which ruling was affirmed on appeal. In affirming the trial court, this court held that, in order to extinguish Beck's ownership interest, a lis pendens notice would have to have been filed in Wabash County.

The Eminent Domain Act, however, was not at issue in *Beck* because the condemnation complaint had been filed after the 1877 Lis Pendens Act had been passed but seventeen years before passage of the 1905 Eminent Domain Act. Moreover, because venue was transferred to Kosciusko County, there were no papers located in Wabash County to give a subsequent purchaser notice of the condemnation. In sum, *Beck* stands neither for the proposition that the Eminent Domain Act and the Lis Pendens Act somehow work in tandem, nor for the proposition that condemnors must file a lis pendens notice to extinguish the rights of subsequent purchasers and encumbrancers. The 1905 Eminent Domain Act was not at issue in *Beck.*

## B. Cox *(1978)*

In addition to *Beck,* the appellees rely on *State v. Cox,* 177 Ind.App. 47, 377 N.E.2d 1389 (1978). In 1966, the State brought condemnation proceedings against Russell and Alice Berry for the purpose of building a highway on land that they owned. *Id.* at 49, 377 N.E.2d at 1390. Because a court-appointed appraiser valued the land at $13,500, the State tendered $13,500 and filed exceptions to the appraiser's report. *Id.* The Berrys were permitted to withdraw the $13,500, which they did on June 7, 1966, provided that they undertook to repay the amount by which the $13,500 exceeded the value to be determined in a trial on the State's exceptions to the appraiser's report. *Id.* The Berrys gave a written undertaking that was recorded in the judgment docket and order book. *Id.* As of the date of the recording, the undertaking would constitute a lien on *all* real estate owned by the Berrys in Jefferson County. *Id.*

Before trial on the State's exception, Alice Berry died. *Id.* At trial on the State's exception, the jury found that the condemned property was worth about $1,000 less than the State had tendered to the Berrys. *Id.* Russell Berry died less than a year after the jury verdict without having paid the State the excess amount. *Id.* The State did not pursue its judgment debt against the estate of Russell Berry because his estate was insolvent. *Id.*

Instead of pursuing the Berry estate, the State sought to foreclose the lien, which was based upon the Berrys' 1966 undertaking, on *other* real estate the Berrys had conveyed to Richard Cox in 1970. *Id.* The trial court held that no lien existed on the land that Cox had acquired from the Berrys, and therefore the State recovered nothing. *Id.* On appeal, this court held that the Berrys' 1966 undertaking was recorded in the judgment docket and order book and, therefore, "under the authority of IC 32–11–1–8 . . ., became a lien upon all the Berrys' real estate." *Id.* at 51, 377 N.E.2d at 1391. As a result, Cox had constructive notice of the State's lien on all the Berrys' property in Jefferson County. *Id.* In other words, when Cox bought land from the Berrys, he knew that they might be unable to repay the State and that the State could execute upon the land to collect money owed by the Berrys.

The court went on to discuss the application of the Lis Pendens Act to Cox's case. Cox contended that the Lis Pendens Act required the State to file notice of condemnation proceedings in the lis pendens record before a subsequent purchaser could be charged with notice of the proceedings. *Id.* at 52, 377 N.E.2d at 1392. This court responded by stating:

> Cox's contention [about lis pendens] is correct as far as it goes. However, the real estate which must be listed in the notice to be recorded in the lis pendens record is the real estate which is actually being appropriated for state use and *not other real estate of the owner which becomes subject to a judgment lien* under the provisions of IC 32–11–1–8 . . . . Therefore, [the Lis Pendens Act] does not apply to the case at bar.

*Id.* (emphasis added).

In other words, the *Cox* court held that the Lis Pendens Act did not apply to the State's filing of the judgment lien. Its remark implying that a lis pendens notice is necessary in condemnation proceedings was obiter dictum. The precise holding in *Cox* turned on the effect of a judgment lien on property other than property that had been appropriated. The outcome in *Cox* did not hinge on whether a subsequent purchaser received constructive notice of the condemnation action from the filing of a condemnation complaint alone.

### C. MDM Investments *(2000)*

In support of their summary judgment motions, the appellees rely heavily on language found in *MDM Investments v. City of Carmel,* 740 N.E.2d 929 (Ind.Ct.App. 2000). In *MDM Investments,* a third party purchased the subject property at a sheriff's sale in connection with a mortgage foreclosure three days after the City's condemnation complaint was filed. *Id.* at 932. On the same day that it filed its condemnation complaint, the City also filed a lis pendens notice. *Id.* at 931. Because the subsequent purchaser was not a record owner of the property when the condemnation complaint was filed, it received no notice of the subsequent proceedings and had no opportunity to contest the appraiser's evaluation of the property. *Id.* at 932. The subsequent purchaser moved to reopen the condemnation proceedings to contest the appraiser's report. *Id.* The trial court denied MDM Investments' motion, prompting MDM Investments to appeal to this court.

On appeal, MDM Investments contended that the Eminent Domain Act required the City to amend its condemnation complaint once it discovered that MDM Investments had purchased the subject property. Before addressing MDM Investments' argument, this court began with the principle that " 'Eminent domain proceedings are statutory, and where the statute fixes a definite procedure it must be followed.' " *Id.* (quoting *Lehnen v. State,* 693 N.E.2d 580, 582 (Ind.Ct.App.1998), *trans. denied.*). The court then recited the guidelines for statutory interpretation and examined that part of the Eminent Domain Act which sets forth the requirements for a complaint. *Id.* at 934. The Eminent Domain Act required only that " 'the names of all owners, claimants and holders of liens on the property or right if known' " be in-

cluded in the condemnation complaint. *Id.* (quoting Ind.Code § 32–11–1–2(2)). That part of the statute setting forth the elements of a valid condemnation complaint made no mention of subsequent purchasers. After surveying the "plain language" of the Eminent Domain Act, this court held that a condemnor is not required by statute to amend its complaint once it learns of the existence of a subsequent purchaser. *Id.* at 934. Thus, the Eminent Domain Act did not require the City to amend its complaint once it learned that MDM Investments was a subsequent purchaser. *Id.* at 934–35.

To support their claim that a condemnor must file a lis pendens to put subsequent purchasers and encumbrancers on notice, the appellees cite the following passage from *MDM Investments:*

> It is equally clear that by using the term "all," the legislature intended that any person who purchases property after the complaint is filed be placed on notice by the filing of the complaint. This, of course, presupposes that the subject matter of the complaint is referenced in some record pertaining to that real estate, *i.e.,* lis pendens.

*Id.* at 934. In a footnote, the *MDM Investments* court further explained, "While the statute provides that the 'filing of the complaint shall constitute notice of proceedings to all subsequent purchasers,' case law has established that filing a lis pendens provides constructive notice to all subsequent purchasers that a claim is pending against the property". *Id.* at 934 n. 3 (citing, among other authorities, *Cox* and *Beck*). The condemnor in *MDM Investments* had filed a condemnation complaint *and a lis pendens notice* three days before MDM Investments had purchased the property. *Id.* at 931. Thus, in *MDM Investments,* this court was not presented with the specific issue now before us: that

is, whether a condemnor must file a lis pendens notice in order to give subsequent purchasers and encumbrancers constructive notice of the condemnation proceedings.

In sum, a review of Indiana case law reveals no published Indiana appellate opinion which held that a condemnor must file a condemnation complaint and a lis pendens notice in order to place subsequent purchasers and encumbrancers on notice.

## IV. "Modern Due Process" and Subsequent Purchasers

Chicago Title and Ticor Title argue that federal "modern due process" requires the filing of a lis pendens notice in order to extinguish the rights of subsequent purchasers and encumbrancers. Title Insurance Appellants' Br. p. 5–8. They cite four U.S. Supreme Court decisions, none of which requires a condemnor to file a lis pendens notice in order to extinguish the rights of subsequent purchasers and encumbrancers. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 320, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (holding that newspaper publication was insufficient notice to trust beneficiaries who were reasonably ascertainable); *Walker v. City of Hutchinson*, 352 U.S. 112, 116, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956) (holding that newspaper publication was insufficient notice to a landowner whose property had been condemned); *Schroeder v. City of New York*, 371 U.S. 208, 211, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962) (holding that newspaper notice along with posting signs in the vicinity of a landowner's property still did not satisfy the requirements of due process); *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) (declaring unconstitutional an Indiana procedure that foreclosed the in rem interests of mortgages based on notice by publication and posting on the property at issue). Each of these U.S. Supreme Court cases involved whether actual notice was given to those having an interest in the property at the time the action was commenced. They do not support the proposition that the U.S. Constitution requires a condemnation complaint and a lis pendens notice to be filed in order to extinguish the rights of subsequent purchasers and encumbrancers of property involved in condemnation proceedings.

## V. A Simple Fix

In apparent recognition of the harshness of the Eminent Domain Act, even Lake Central and the amici curiae in favor of Lake Central's position advanced an alternative argument.[4] They argued that if we were to hold that a lis pendens notice was necessary, then they requested that we only apply the holding prospectively. Yet, had we held that a lis pendens was necessary, we would have substituted our judgment for that of the General Assembly. "To allow the courts to substitute their judgment for that rendered by the representatives of the people, in instances where the legislature has not acted arbitrarily, would violate the doctrine of separation of powers." *Rassi v. Trunkline Gas Co.*, 262 Ind. 1, 8, 240 N.E.2d 49, 53 (1968).

■ Although a court may not substitute its judgment for that of the General Assembly, Indiana courts have been called to evaluate laws that affect the administration of justice. Indeed, the General Assembly has created by statute "the office of judicial administration" within the office of the Chief Justice of Indiana. Ind.Code § 33–2.1–7–1. One task of the office of judicial administration is to "[c]ollect and

---

4. *See* Appellants' Br. p. 11, 42–44; Br. of Amici Curiae Indiana Association of Cities and Towns and Indiana School Boards Association p. 6.

compile statistical data and other information on the judicial work of the courts of the state." Ind.Code § 33–2.1–7–3(a)(2). The information gathered is compiled into an annual report and must include, among other things: "the volume, condition, and type of business conducted by the courts, the methods of procedure therein, [and] the work accomplished by the courts." *Id.*

One such report detailing 1999 court statistics, which is the same year Lake Central filed its condemnation complaint, demonstrates the virtual impossibility of discovering condemnation actions simply by searching the court files of pending lawsuits. For example, on December 31, 1999, there were 29,799 cases pending in the Lake County civil courts of record. *See* Division of State Court Administration, *1999 Indiana Judicial Service Report* 192–93 (Vol.II). By searching through these files, a bona fide purchaser in Lake County is apparently expected to find a condemnation complaint that may involve the property or a portion of the property he is planning to buy. To make matters worse, in Lake County such courts are located in four different cities: Crown Point, East Chicago, Gary, and Hammond. *See* Br. of Amicus Curiae Indiana Land Title Association, Inc. p. 6.

An inexpensive and simple way to give realistic notice to subsequent purchasers and encumbrancers would be to require a condemnor to file a condemnation complaint and a lis pendens notice. A lis pendens notice requires no more information than that already contained in a condemnation complaint. A lis pendens notice includes: (1) the title of the court; (2) the names of all parties to the suit; (3) the legal description of the particular real estate; and (4) the nature of the interest sought to be enforced. *Compare* Ind.Code Ann. § 32–30–11–3(b) (West 2002) (setting forth requirements of a lis pendens notice), *with* Ind.Code Ann. § 32–24–1–4 (West

2002) (setting forth similar requirements of a proper condemnation complaint). Adding five words to the Eminent Domain Act would significantly alleviate the burden on subsequent purchasers and encumbrancers. Section 32–24–1–4(c) of the Eminent Domain Act could be amended to read: "The filing of the complaint *and a lis pendens notice* constitutes notice of proceedings to all subsequent purchasers and persons taking encumbrances of the property, who are bound by the notice." *Cf.* Ind.Code Ann. § 32–24–1–4(c) (West 2002). At the same time, such a change will minimally affect the condemnor, who will only be required to file a document in the lis pendens record which contains the same information already found in the condemnation complaint.

### CONCLUSION

Though the filing of a lis pendens notice would lift a heavy burden from subsequent purchasers and encumbrancers with little corresponding effect on the condemnor, such a change in the Eminent Domain Act is left to the judgment of the General Assembly. This court may not substitute its judgment for that of the legislature. None of our cases have held that a condemnor must file a lis pendens to give notice, and federal constitutional law has not been shown to require a lis pendens in order to extinguish the rights of subsequent purchasers. For these reasons, the trial court erred in granting the appellees summary judgment and in denying Lake Central summary judgment.

Reversed and remanded for entry of summary judgment in favor of Lake Central.

DARDEN, J., concurs.

SULLIVAN, J., dissents with opinion.

SULLIVAN, Judge, dissenting.

Implicit in the majority's opinion is the assumption that because the Lis Pendens

Act of 1877 pre-dated passage of the Eminent Domain Act of 1905, the provision of the latter, which stated that the filing of the condemnation complaint constituted notice to all subsequent purchasers and other interest holders, created an exception to the notice requirements of the Lis Pendens Act. I disagree.

The power of eminent domain has been governed by statute since territorial days. *See* Louis L. Hegyi, Note, *Eminent Domain in Indiana: 1816–1865*, 54 Ind. L.J. 427 (1979). Therefore it cannot be reliably said that the silence of the 1905 Act concerning lis pendens notice constitutes an exception to the provisions of the 1877 Act. Seemingly to the contrary, it is more likely that passage of the 1877 Act was intended to reinforce and strengthen the protection afforded to good faith subsequent acquires by putting them on notice of pending litigation concerning the real estate in question. This of course would include condemnation litigation pursuant to 19th century statutes, e.g., condemnation for railroad, canal, and turnpike purposes and other internal improvements by the State. *See* Act of January 27, 1836, Ch. 2, 1835–36, Ind. Gen Laws 6. Accordingly, I would harmonize the reading of the two Acts by holding that the 1905 Eminent Domain Act must be read to include the filing of a lis pendens notice in order to cut off the interests of subsequent good faith acquires.

I would furthermore note that the mere filing of a condemnation complaint does not necessarily lead to an appropriation order as to the real estate in question. The condemning authority might decide to utilize a different location or route for its proposed project and dismiss the pending eminent domain suit. For this reason, the mere filing of the complaint does little more than to make prospective interest acquires aware of a possibility that the landowner's title may be adversely affected. As the majority notes, a requirement that the condemnor file a lis pendens notice is without undue burden to the condemning authority (at 1082) and is a worthwhile protection against "a greater mischief that would arise by people's purchasing a right under litigation...." *Green et al. v. White*, 7 Blackford 242, 244 (Ind.1844).[5]

Whether dicta or not, I would heed the messages conveyed by the decisions in *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. v. Beck*, 84 Ind.App. 380, 139 N.E. 705 (1923), *State v. Cox*, 177 Ind.App. 47, 377 N.E.2d 1389 (1978), and *MDM Investments v. City of Carmel*, 740 N.E.2d 929 (Ind.Ct.App.2000). Accordingly, I would hold that in order to cut off the rights and interests of good faith subsequent acquires, a condemnor must not only file the complaint but must also file a lis pendens notice.

Accordingly, I would apply the requirement of lis pendens notice not only prospectively but to this case as well and would affirm the judgment of the trial court.

---

**5.** The majority acknowledges the wisdom and validity of a lis pendens requirement in cases such as before us but concludes that such is better left to the enactment of amendatory legislation by the General Assembly. I, however, am of the view that this court may and should do so in the exercise of our duty to reconcile arguably inconsistent statutes and to achieve common sense and order to the process. To be sure, I also am of the view that it would be wise for the General Assembly to augment my proposed holding by filling the interstices with legislation.