# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 30 2019, 6:09 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

William Mark Scott
Washington, DC

ATTORNEYS FOR APPELLEE

Rebecca J. Seamands
Derek R. Molter
Audrey K. Howard
Indianapolis, Indiana

Andrew P. Seiwert
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

William Mark Scott,

*Appellant-Plaintiff,*

v.

Indiana Finance Authority,

*Appellee-Defendant,*

Union Hospital, Inc.,

*Intervenor*

July 30, 2019

Court of Appeals Case No.
18A-MI-2446

Appeal from the Marion Superior Court

The Honorable James A. Joven, Judge

Trial Court Cause No.
49D13-1710-MI-39345

**Altice, Judge.**

## Case Summary

William Mark Scott appeals from the trial court's grant of summary judgment in favor of the Indiana Finance Authority (IFA) and Union Hospital, Inc. (the Hospital) on Scott's complaint seeking to gain access, pursuant to Indiana's Access to Public Records Act (APRA), Ind. Code § 5-14-3-1, *et seq*, to records in possession of IFA.

We affirm.

## Facts & Procedural History

IFA is a public agency subject to APRA. The purpose of IFA is to facilitate financing for health facilities and health facility property. Ind. Code § 5-1.2-7-1. One available financing method is the issuance of tax-exempt bonds for the benefit of health-care providers for several statutorily authorized purposes. I.C. § 5-1.2-7-7.

In 1993, the Hospital, a private, nonprofit corporation, requested the issuance of tax-exempt hospital revenue bonds (the 1993 Bonds)[1] and ultimately used the proceeds from the issuance of such to undertake certain capital improvements and to refinance some outstanding indebtedness. In February 2004, the Hospital entered into a total-return swap arrangement with a financial

---

[1] IFA is the statutory successor to the Indiana Health Facility Financing Authority, which was the State agency that issued the 1993 Bonds.

institution by which the Hospital purchased the 1993 Bonds from existing bond holders and then sold the 1993 Bonds to the financial institution. According to the Hospital, the swap transaction "was an investment vehicle that [it] entered into in order to reduce its interest rate exposure with respect to the 1993 Bonds." *Appellant's Appendix Vol. 2* at 140. The IFA was not a party to the swap transaction.

[5] On or about February 14, 2013, the IFA received an Information Document Request (IDR) from the Internal Revenue Service (the IRS) indicating that the IRS was conducting an examination of the 1993 Bonds to determine compliance with federal tax laws and requesting certain information and documentation regarding the 1993 Bonds. IFA forwarded the request to the Hospital, which, with the assistance of counsel, prepared a response to the initial IDR. Over the course of the next three years, the Hospital and the IRS exchanged correspondence and the Hospital provided the IRS with necessary information and documentation. IFA did not provide any of the information that was incorporated into the Hospital's responses to the IRS's IDRs. The Hospital acknowledged the swap transaction in its audited financial statements, which are publicly available, but did not disclose details or documents related to such. The IRS concluded its examination in April 2016.

[6] On June 10, 2015, while the IRS examination was ongoing, Scott submitted an APRA request to IFA for:

> All correspondence and agreements received, created, sent or executed relating to an examination by the U.S. Internal

> Revenue Service of the tax-exempt status of the $43,960,000
> Indiana Health Facility Financing Authority, Hospital Revenue
> Bonds, Series 1993 (Union Hospital).

*Id.* at 26. IFA denied Scott's request, explaining that the records requested were exempt from public access under APRA. Scott filed a formal complaint with the Indiana Public Access Counselor (the PAC) concerning IFA's denial of his public records request.

[7]   On September 4, 2015, the PAC issued an advisory opinion concluding that IFA did not violate APRA in refusing to allow Scott access to the requested records. The PAC found that the records requested by Scott were exempt from APRA because such records were required to be kept confidential by federal law and because they contained confidential financial information. *See* Ind. Code § 5-14-3-4(a)(3), (5).

[8]   Nearly two years later, on August 4, 2017, Scott submitted "a new written request for public records" to IFA, requesting copies of "records with respect to the **$43,960,000 Indiana Health Facility Financing Authority, Hospital Revenue Bonds, Series 1993 (Union Hospital)** . . . and any potential reissuance of such Bonds." *Appellant's Brief* at 9; *Appellant's Appendix Vol. 2* at 29 (emphasis in original). Scott specifically identified:

- The Indenture of Trust and any supplements or addendums;
- The Loan Agreement(s)
- All tax certificates, tax agreements, and tax opinions; and

- All Forms 8038, 8038-T and 8038-R filed with the [IRS].

*Appellant's Appendix Vol. 2* at 29. With regard to the IRS's examination of "the [1993] Bonds (or any reissued Bonds)," Scott requested:

- All communications in any form (electronic or otherwise, including emails) sent to the [IRS] by or on behalf of [IFA];

- All communications in any form (electronic or otherwise, including emails) received by or on behalf of [IFA] from the [IRS], including any and all "Information Document Requests";

- All communications (electronic or otherwise, including emails) sent or received by [IFA] to any other person with respect to such examination; and

- All agreements entered into with the [IRS].

*Id*. IFA provided four documents pertaining to issuance of the 1993 Bonds but would not disclose records relating to the IRS examination of the 1993 Bonds, specifically, the following:

(a) Information Document Requests ("IDRs") issued by the IRS as part of its examination of the 1993 Bonds;

(b) Correspondence and attachment providing information responsive to the IDRs to the IRS as part of the IRS examination of the 1993 Bonds, including information regarding the total return swap arrangement entered by [the Hospital];

(c) Correspondence to and from the IRS regarding the resolution of the IRS examination of the 1993 Bonds; and

(d) IRS forms filed with the IRS.

*Id*. at 185. IFA explained that such documents were excepted from disclosure under APRA, specifically, I.C. § 5-14-3-4(a)(3) and (a)(5). IFA found its response "wholly consistent" with the PAC's response to Scott's 2015 complaint, in which Scott requested "substantially the same information" as he was currently requesting. *Id*. at 33. Scott did not file a complaint or otherwise seek another advisory opinion from the PAC.

[9] On October 19, 2017, Scott filed his complaint in the trial court alleging that IFA improperly withheld public records arising out of the IRS examination of the 1993 Bonds. On January 2, 2018, the Hospital intervened in the proceeding. Scott filed a motion for summary judgment on March 8, 2018. A week later, IFA and the Hospital filed a joint motion for summary judgment along with supporting affidavits from Wayne Hutson, Executive Vice President and Chief Financial Officer of the Hospital, and Cynthia Herron, Program and Office Manager for IFA.

[10] The trial court held a hearing on the competing summary judgment motions on June 25, 2018. On September 13, 2018, the trial court entered an order granting IFA's and the Hospital's joint motion for summary judgment and denying Scott's motion for summary judgment. Scott now appeals. Additional information will be provided as necessary.

## Discussion & Decision

[11] Summary judgment is proper if the evidence shows that there is no issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Lake Cent. Sch. Corp. v. Hawk Dev. Corp.*, 793 N.E.2d 1080, 1083 (Ind. Ct. App. 2003), *trans. denied*. Where, as here, the relevant facts are not in dispute and the interpretation of a statute is at issue, such statutory interpretation presents a pure question of law for which summary judgment disposition is particularly appropriate. *See Lake Cent. Sch. Corp.*, 793 N.E.2d at 1084.

[12] When a public agency denies access to public records based on an APRA disclosure exemption, the party whose request has been denied may file an action in the trial court for de novo review. I.C. § 5-14-3-9(e), (f). The public agency bears the burden of proof to sustain its denial. *Id*. The public agency meets its burden of proof by showing that the undisclosed records fall within an exception listed under I.C. § 5-14-3-4 and by establishing the content of those records with adequate specificity beyond merely relying on a conclusory statement or affidavit. I.C. § 5-14-3-9(f), (g). If the undisclosed records fall within a mandatory exception listed under I.C. § 5-14-3-4(a), as a matter of law the records shall not be disclosed.

[13] Public policy underlying APRA is that "all persons are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees." I.C. § 5-14-3-1. To that end, our legislature declared that APRA shall be "liberally construed" to implement this policy. *Id*. Notwithstanding, we have recognized that

"[l]iberal construction does not mean that expressed exceptions specified by the legislature are to be contravened." *Robinson v. Indiana Univ.*, 659 N.E.2d 153, 156 (Ind. Ct. App. 1995) (quoting *Heltzel v. Thomas*, 516 N.E.2d 103, 106 (Ind. Ct. App. 1987), *trans. denied*), *trans. denied*. Indeed, the public's right of access to public records is subject to well-recognized exceptions under APRA. One exception is for "[c]onfidential financial information obtained, upon request, from a person." I.C. § 5-14-3-4(a)(5).[2]

[14] Here, Scott seeks documents relating to an IRS examination of 1993 Bonds that, ten years later, were part of a total-return swap transaction between the Hospital and a separate financial institution. In accordance with APRA, IFA provided Scott with the public records pertaining to issuance of the 1993 Bonds. IFA, however, denied Scott's request for the records and documents relating to the Hospital's subsequent swap transaction. IFA and the Hospital maintain that such records contain confidential financial information of the Hospital that came into the possession of IFA only as a result of the IRS's requests during its examination. We agree.

[15] First, as was noted above, the swap transaction was between the Hospital, a private entity, and a financial institution, neither of which are subject to APRA. IFA was not involved in this transaction. Second, in an affidavit submitted in

---

[2] This exception "does not include information that is filed with or received by a public agency pursuant to state statute." I.C. § 5-14-3-4(5). Here, IFA gained access to the requested documents through an IRS examination and the exchange of information related thereto, not pursuant to any state statute.

support of IFA's and the Hospital's motion for summary judgment, Hutson, the Hospital's Executive Vice President and CFO, stated under penalty of perjury that the undisclosed documents Scott requested relate to the swap transaction and contain confidential financial information of the Hospital. Hutson described the records as containing the "specific details and/or documentation regarding the Swap transaction" that would "provide both its competitors and the marketplace an inside look at [the Hospital]'s financial strategy, as well [as] the specific financial details of a significant financial transaction." *Appellant's Appendix Vol. 2* at 140. Hutson further asserted that "at all relevant times, [the Hospital] maintained the confidentiality of the information contained within the Documents at Issue" and that such documents were provided to IFA only for purposes of responding to the IDRs. *Id.* The Hospital did not otherwise consent to disclosure of the information contained therein. Finally, both Hutson and Herron asserted that IFA did not provide any of the documents included in the responses to the IDRs. Essentially, IFA served as a pass-through entity with regard to the exchange of documents and information between the IRS and the Hospital during the IRS's examination.

[16] Based on the undisputed, designated evidence, we conclude that the documents relating to the swap transaction contain confidential financial information belonging to the Hospital.[3] The Hospital provided these documents to IFA in

---

[3] Scott, relying on a Seventh Circuit decision from 1984, argues that the requested documents cannot be deemed confidential because IFA and the Hospital failed to establish that disclosure of such would impose substantial competitive harm. *See Gen. Elec. Co. v. U.S. Nuclear Regulatory Comm'n*, 750 F.2d 1394, 1398 (7th

response to the IRS's request for information. As such, the documents are not properly the subject of a records request under APRA. *See* I.C. § 5-14-3-4(a)(5).

[17] Scott also argues that there is no evidence that "*all*" of the requested documents related to the swap transaction. *Appellant's Brief* at 28 (emphasis in original). In so arguing, he suggests that IFA and the Hospital were required to provide a records log detailing the content of each of its responses to the IDRs. APRA, however, does not require a records log that provides the detail Scott is seeking.

[18] An agency meets its burden through de novo judicial review "by establishing the content of the record with adequate specificity and not by relying on a conclusory statement or affidavit." I.C. § 5-14-3-9(f). Scott specifically requested documents "[w]ith respect to the examination of the [1993] Bonds (or any reissued Bonds) by the [IRS]." *Appellant's Appendix* at 29. In denying his request, IFA identified categories of documents, including correspondence to and from the IRS and attachments responsive to the IDRs concerning the swap transaction. We conclude that IFA sufficiently established the content of the records it was withholding from Scott.

---

Cir. 1984) (adopting a narrow interpretation of what constitutes confidential information as used in 5 U.S.C. § 552(a)(4) of the federal Freedom of Information Act so as to require a showing of "substantial competitive harm" to establish information as confidential). The U.S. Supreme Court, however, recently rejected the "substantial competitive harm" standard adopted for purposes of applying 5 U.S.C. §552(a)(4), finding it inconsistent with the statutory language. *Food Mktg. Inst. v. Argus Leader Media*, 139 S.Ct. 2356, 2365-66 (2019). In any event, Indiana has never adopted the "substantial competitive harm" requirement for establishing the confidentiality of information under APRA.

[19] Because Scott did not "substantially prevail[]," his request for reimbursement of expenses is denied. *See* I.C. § 5-14-3-9(i)(1) (providing that "a court shall award reasonable attorney's fees, court costs, and other reasonable expenses of litigation to the prevailing party if . . . the plaintiff substantially prevails").

[20] Judgment affirmed.

Kirsch, J. and Vaidik, C.J., concur.