**Tanette KINNON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 45A05–0812–CR–731.**

Court of Appeals of Indiana.

June 30, 2009.

Jeffrey Schlesinger, Crown Point, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Marjorie Lawyer–Smith, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROWN, Judge.

Tannette Kinnon appeals her conviction for official misconduct as a class A misdemeanor.[1] Kinnon raises one issue, which we revise and restate as whether the evidence is sufficient to sustain her conviction for official misconduct as a class A misdemeanor. We affirm.

The relevant facts follow. Tannette Kinnon was employed by the Indiana Family and Social Services Administration in Lake County, Indiana as a homemaker for the time period between July 1, 2004 and September 30, 2005. Homemakers' duties in Lake County primarily consist of

---

1. Ind.Code § 35–44–1–2 (2004) (subsequently amended by Pub.L. No. 222–2005, § 48 (eff. May 11, 2005)).

picking up children who are in foster homes and transporting them to a destination such as a doctor's office, a biological parent for visitation, or to school. Homemakers use their own vehicles and they are reimbursed by the state for mileage.

On July 7, 2005, the Indiana Office of Inspector General received a complaint from the Office of Management and Budget regarding mileage reimbursements for State employees during the fiscal year of July 1, 2004 to June 30, 2005. After conducting an audit, the Office of Management and Budget referred to the Office of Inspector General the names of the ten State employees who submitted the highest reimbursement claims. Kinnon was number one on the list. For the time period the Office of Inspector General initially examined, July 1, 2004 until June 30, 2005, Kinnon reported 95,869 miles, which translated into $32,595.69 in reimbursements. Although four homemakers in Kinnon's district were all in the top ten for mileage statewide, Kinnon's amount was about three times that of the next-highest claim.

The Office of Inspector General and Sylvia Stincic–Ferry, a Special Investigator with the Family and Social Services Administration, investigated one-third of the total reimbursement claims made by Kinnon. Several inconsistencies were discovered when investigators compared Kinnon's time sheets and overtime sheets with her mileage reimbursement requests. First, between June and August of 2005, Kinnon reported ten round trips to a residential addiction treatment facility named Transitions located in Fort Wayne, Indiana, for a total of 3,160 miles. Although the facility requires everyone who visits to sign in upon entering, Transitions found no record of Kinnon ever being there between June and August of 2005. Also, Child Protection Services did not have any documents ordering transports to Transitions during that period.

Second, Kinnon claimed to have transported a foster child to the home of Cynthia Crisler, making sixteen round trips to that home between October and November of 2004. When investigators spoke with Crisler, however, she stated that Kinnon had driven the child there only three times, noting also that the child stayed permanently with them after the third transport.

Third, investigators discovered a discrepancy during September of 2005. Kinnon admitted that she was on vacation during the week of September 4 through September 11, but she reported mileage during that period of 1,772 miles. Investigators could substantiate only seven out of twenty-eight trips that Kinnon claimed to have driven that month.

Based on their research, investigators determined that Kinnon claimed 193 fraudulent trips, and claimed at least 38,000 miles fraudulently. This discrepancy was supported by the odometers on the two vehicles Kinnon had access to: her car and her husband's pickup truck. On August 16, 2005, the car's odometer read 65,771 miles. She purchased the car on May 29, 2004, and at that time it had 3,747 miles. The odometer on her husband's pickup truck read 149,680 miles on August 16, 2005, and based on service records the vehicle had "around 133" thousand miles in the summer of 2004. Transcript at 197, 199. Thus, the total mileage the Kinnons' vehicles had been driven during that time was around 79,000 miles, but Kinnon claimed over 95,000 miles in mileage reimbursements.

When investigators questioned Kinnon about their findings, Kinnon first "indicated it was a mistake, and then indicated that it was not a mistake. And then also indicated that she didn't go half the times." *Id.* at 226. Kinnon also admitted that:

She ... was on vacation for that week in September ... that she should not have written half of the things she wrote ... that when asked why she shouldn't have written them, she said, 'Because she didn't go'. [sic] Furthermore, she had indicated on numerous occasions that she did not keep accurate records.[2]

*Id.* at 203.

On March 15, 2006, the State charged Kinnon with theft as a class D felony and official misconduct as a class A misdemeanor. On June 28, 2007, Kinnon pled guilty to both counts. On July 2, 2007, Kinnon filed a motion to set aside her guilty pleas, and on August 3, 2007, the trial court conducted a hearing and granted the motion. After a jury trial, Kinnon was found not guilty of theft and guilty of official misconduct. The trial court sentenced Kinnon to one year in the Lake County Jail, and suspended three months to probation.

The sole issue is whether the evidence is sufficient to sustain Kinnon's conviction. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State,* 867 N.E.2d 144, 146 (Ind.2007). We do not assess witness credibility or reweigh the evidence. *Id.* We consider conflicting evidence most favorably to the trial court's ruling. *Id.* We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quoting *Jenkins v. State,* 726 N.E.2d 268, 270 (Ind.2000)). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id* at 147. The evidence is sufficient if an inference

may reasonably be drawn from it to support the verdict. *Id.*

The offense of official misconduct is governed by Ind.Code § 35–44–1–2, which in pertinent part provides that "a public servant who ... knowingly or intentionally performs an act that he is forbidden by law to perform ... commits official misconduct, a Class A misdemeanor." Thus, to convict Kinnon of official misconduct as a class A misdemeanor, the State needed to prove that Kinnon: (1) was a public servant, who; (2) knowingly or intentionally; (3) performed an act that she was forbidden by law to perform, in this case the act of "tak[ing] money which she was not entitled to take from the Indiana Family and Social Services Administration." Appellant's Appendix at 10. Although the statutory language is broad, "the heart of the issue in an official misconduct charge is explicit: whether the act was done by a public official in the course of his official duties.... A charge for misconduct must rest upon criminal behavior that is related to the performance of official duties." *State v. Dugan,* 793 N.E.2d 1034, 1039 (Ind.2003).

Kinnon does not argue that she was not a public servant. Rather, Kinnon argues only that "[a]lthough Kinnon may have been a tardy and a sloppy record keeper, and may even have submitted claims for mileage reimbursement to which she was not entitled, there was no evidence that she did so knowingly or intentionally." Appellant's Brief at 5. Kinnon also correctly points out that although she was number one on mileage reimbursement requests, "Kinnon did most of the transportation of children to locations which were more distant from Lake County, including

---

**2.** At trial, the State played for the jury taped interview evidence of three interviews conducted with Kinnon: two by the Office of the Inspector General and one by Ferry. Unfortunately, transcripts of the interviews were not included in the record. Therefore, we are forced to rely on what the investigators testified to regarding these interviews in discerning their contents.

Indianapolis and Fort Wayne." *Id.* at 6. She maintains that some of the inaccuracies were due to her using a "mileage sheet which workers were permitted to use in place of exact mileage." *Id.*

The evidence at trial demonstrated that between July 1, 2004 and September 30, 2005, Kinnon reported more in mileage reimbursement requests than any other State employee. An investigation into Kinnon's mileage reimbursement requests, which were paid by the State, produced evidence that Kinnon did not drive to a treatment center in Fort Wayne ten times as reported, that Kinnon did not make sixteen round trips to the home of Cynthia Crisler as reported, and that Kinnon claimed she drove 1,772 miles for the State while in fact she was on vacation. In addition, Kinnon admitted that she reported mileage for trips that she did not take, and at one point she admitted that it was not a mistake.

Based upon our review of the record, we conclude that evidence of probative value exists from which a jury could have found that Kinnon committed official misconduct as a class A misdemeanor. *See Bowman v. State,* 573 N.E.2d 910, 912 (Ind.Ct.App. 1991) (holding that the evidence was sufficient to support a conviction for official misconduct where defendant "submitted false or misleading records of work hours ... with the intent to obtain currency"), *cert. denied,* 504 U.S. 986, 112 S.Ct. 2968, 119 L.Ed.2d 588 (1992).

For the foregoing reasons, we affirm Kinnon's conviction for official misconduct as a class A misdemeanor.

Affirmed.

CRONE, J. and BRADFORD, J., concur.