In re Marriage of Dorwyn Craig COLLIER, Appellant (Respondent below),

v.

Anne C. COLLIER, Appellee (Petitioner below).

No. 02S03–9811–CV–694.

Supreme Court of Indiana.

Dec. 4, 1998.

David K. Hawk, Fort Wayne, for Appellant.

Jeffrey A. Modisett, Attorney General, Jon Laramore, Deputy Attorney General, Indianapolis, for Appellee.

## ON PETITION TO TRANSFER

BOEHM, Justice.

In this case we hold that Indiana's child support enforcement program is authorized under Indiana law to provide representation for parents seeking modification of child support orders.

### Factual and Procedural Background

A full recitation of the facts of this case is found in the Court of Appeals' opinion. *In re the Marriage of Collier v. Collier*, 696 N.E.2d 47, 49–50 (Ind.Ct.App.1998). We granted transfer to address a single issue: whether the State, through the Child Support Bureau, is authorized to assist parents in support

modification actions as well as in initial support proceedings. The relevant facts to this issue are as follows. Dorwyn Collier (the "Father") and Anne Collier (the "Mother") were divorced in 1987. At that time the Father was ordered to pay fifty dollars per week in child support for the couple's only child, then aged six. In 1990, although she had never sought or received federal financial assistance, the Mother executed an assignment in conjunction with an application for legal and administrative assistance in collecting support. In 1995, with the assistance of the Allen County Prosecutor, the Mother filed a petition to modify the child support order. On the same day the State of Indiana, based on the assignment, appeared via the Allen County Prosecutor and filed a motion to intervene "in so far as support matters are concerned." The trial court initially granted the State's motion to intervene but subsequently, on motion of the Father, denied intervention and also disallowed representation of the Mother by the Prosecutor. After some additional skirmishing and an abandoned attempt by the State to appeal the denial of its attempt to intervene, the Mother hired private counsel and proceeded alone. In February, 1997, the trial court ordered the Father to pay $199 per week from the time the petition was filed in 1995. An arrearage of over $15,000 had accumulated since the time the petition was filed and the Father was ordered to pay this arrearage at a rate of not less than $200 per week commencing when the child becomes emancipated.

The Father appealed some aspects of the trial court's award and the Mother, now again represented by the State, cross-appealed the trial court's disqualification of the Prosecutor as her counsel as well as some substantive points. The Court of Appeals held that Indiana Code § 12–17–2–21 "has not provided the State with the authority to intervene and represent a party in the initiation of an action to modify an existing child support order" and affirmed the trial court's ruling that the Prosecutor could not represent the Mother in seeking modification of the support order. *Collier*, 696 N.E.2d at 54. The Court of Appeals found that the trial

court did not abuse its discretion in resolving the substantive issues raised by either party and affirmed the trial court in all respects. The State sought transfer and filed a petition to advance the case on the docket. We granted transfer on October 30, 1998.

## The State's Statutory Authority includes Assistance with Modification Proceedings

Citing both state and federal law, the State argues that the General Assembly authorized an attorney under contract with the Child Support Bureau—in this case the Allen County Prosecutor—to represent parents in modification actions as well as in proceedings to obtain support orders. In rejecting that contention, the Father and the Court of Appeals relied on the list of duties found in Indiana Code § 12–17–2–21 (1998). In a nutshell, the Court of Appeals found the omission of explicit mention of modification proceedings to be conclusive evidence that the General Assembly did not authorize the State to assist parents with modification actions. Absence of authority to assist in modification proceedings is fortified by the phrase "when there is no existing order" in subsection 21(2), which authorizes assistance. This arguably suggests that the presence of an order precludes State aid in a modification proceeding. We conclude, however, that the statute taken as a whole includes the authority to assist in modification proceedings.

 The General Assembly established the Child Support Bureau in 1976.[1] It charged the Bureau with administering the state plan to implement the provisions of Title IV–D of the federal Social Security Act. The duties of the Bureau are set out in Indiana Code § 12–17–2–21. They include the obligation to:

(1) Collect support payments when the payments have been assigned to the state by the application for assistance under Title IV–A.

(2) Assist in obtaining a support order, including an order for health insurance coverage under IC 27–8–23, when there is no existing order and assistance is sought.

(3) Assist mothers of children born out of wedlock in establishing paternity and obtaining a support order, including an order for health insurance coverage under IC 27–8–23, when the mother has applied for assistance.

(4) Implement income withholding in any Title IV–D case:

 (A) with an arrearage; and

 (B) without an order issued by a court or an administrative agency.

IND.CODE § 12–17–2–21(a) (1998). The Bureau is given explicit statutory authority to contract with prosecuting attorneys or private attorneys [2] to "undertake activities ... including determination of paternity, determination and enforcement of child support ... prosecutions of welfare fraud." IND. CODE § 12–17–2–18 (1998). All of the services provided by the Bureau with regard to parent locator services and support services are available to individuals regardless of whether they receive public assistance. IND. CODE § 12–17–2–22 (1998). Although less than crystal clear, viewed solely as a matter of statutory language, "enforcement" of child support certainly may embrace seeking modification of an order. We believe this conclusion is inescapable in light of the history and purpose of the statute, other provisions of the law and the administrative regulations implementing it.

1. The 1976 Act created the Child Support Division of the Indiana state Department of Public Welfare. The Child Support Division was set up to administer the state's plan under Title IV–D. *See* Pub.L. No. 47–1976, §§ 1 to 3, 1976 Ind. Acts 184–90. Although the name was changed in the 1992 recodification to the Child Support Bureau, its responsibility to implement Title IV–D in Indiana remains substantively the same. *Compare* IND.CODE § 12–17–2 (1998) *with* IND.CODE § 12–1–6.1 (1976). All citations in this opinion are to the 1992 recodified version found in the 1998 Indiana Code.

2. "The bureau shall make the agreements necessary for the effective administration of the plan with local governmental officials within Indiana. The bureau shall contract with: (1) a prosecuting attorney; or (2) a private attorney if the bureau determines that a reasonable contract cannot be entered into with a prosecuting attorney and the determination is approved by at least two-thirds (2/3) of the Indiana child custody and support advisory committee (established under IC 33–2.1–10–1)...." IND.CODE § 12–17–2–18 (1998).

■ The authority of attorneys under contract with the Bureau to assist in seeking modification of support orders presents a question of statutory construction. The goal of statutory construction is to determine, give effect to, and implement the intent of the legislature. *Superior Constr. Co. v. Carr,* 564 N.E.2d 281, 284 (Ind.1990). The statute is examined as a whole, and while the language itself is analyzed, this Court refrains from overemphasizing a strict literal or selective reading of individual words. *Sullivan v. Day,* 681 N.E.2d 713, 717 (Ind. 1997); *Clifft v. Indiana Dep't of State Revenue,* 660 N.E.2d 310, 316 (Ind.1995); *Park 100 Dev. Co. v. Indiana Dep't of State Revenue,* 429 N.E.2d 220, 222 (Ind.1981) (the legislative intent as ascertained from the statute as a whole prevails over the strict literal meaning of any word or term). We have additional guidance in construing the statutes involved in this case: "IC 12–13 through IC 12–19 shall be liberally construed so that the purposes may be accomplished as equitably, economically, and expeditiously as possible." IND.CODE § 12–13–5–12 (1998).

■ By establishing the Child Support Bureau, the General Assembly intended to provide children in Indiana better access to the resources of their parents by providing State assistance in obtaining and enforcing support orders. Because Indiana adopted this law pursuant to a federal mandate, the expressed federal purpose of "enforcing the support obligations owed by absent parents to their children and the spouse (or former spouse) ... locating absent parents, establishing paternity, obtaining child and spousal support" is also relevant. 42 U.S.C. § 651 (1994 & Supp. II 1996). The purpose of child support in general, and the State's assistance even in cases where the child's household is not receiving public assistance, is to provide the child with resources in parity with those of both parents. *See Estate of Brummett by Brummett v. Brummett,* 472 N.E.2d 616, 619 n. 4 (Ind.Ct.App.1984); *Wendorf v. Wendorf,* 174 Ind.App. 172, 173, 366 N.E.2d 703, 705 (1977) (purpose of child support is to provide

children with standard of living they would have enjoyed had the marriage not been dissolved).

This purpose is served not only by the initial order but also by any necessary modification of a support order. The Child Support Guidelines adopted by this Court clearly anticipate that the parents' incomes are to be a major factor in determining the amount of support each will provide for the child. Ind. Child Support Guideline 1. Because parental incomes fluctuate with changing jobs, educational level and the economy, child support obligations, as they are determined by the Guidelines, are also subject to modification upon a substantial change in circumstances. Child Supp. G. 4 & cmt. (change in circumstances may result from change in income of parents). This case presents a common example. Father was a student at the time of the dissolution but subsequently became a practicing physician with an income at times in six figures. The legislative purpose to provide children with a share of their parents' incomes through child support would be severely hampered if attorneys working through the Bureau were limited to seeking initial orders. In view of the somewhat ambiguous language already discussed this purpose is instructive.

The same conclusion is supported by other provisions in Indiana's family law statutes, some of which expressly contemplate that the Child Support Bureau may initiate actions to modify support orders. Section 31–14–11–3(b) states: "If, however, the Title IV–D agency [the Bureau in this case] initiates action to establish or modify a support obligation and petitions the court to include basic health and hospitalization insurance coverage in the support order, the court shall consider including a provision for this insurance coverage...." Section 31–16–8–2 states: "The court shall consider modifying a support order to include basic health and hospitalization coverage for the child if a Title IV–D agency [3] authorized under the federal Social Security Act (42 U.S.C. 651 through 669) and IC

**3.** "Title IV–D agency means (1) the child support bureau created within the division of family and children as the single state agency to administer the child support provisions of Title IV–D of the

federal Social Security Act (42 U.S.C. 651 through 669)...." IND.CODE § 31–9–2–130(1) (1998).

12–17–2–21, petitions for the modification...."

■ In addition, regulations promulgated by the Division of Family and Children under the authority of Indiana Code § 12–17–2 define "Child Support Enforcement Services" to include "the legal activities necessary to establish or enforce a child support order including ... modification of an existing support order...." 470 I.A.C. 2–5–1(1) (1996). This provision has been on the books since 1977 following the creation of the Child Support Division in 1976. Although we are not bound by administrative regulations, they can provide insight into legislative intent. A long-standing administrative interpretation of a statute dating from its enactment, without legislative modification, raises a presumption of legislative acquiescence to agency interpretation which is strongly persuasive on a court. *Baker v. Compton,* 247 Ind. 39, 42, 211 N.E.2d 162, 164 (1965); *Board of Sch. Trustees v. Marion Teachers Ass'n,* 530 N.E.2d 309, 311 (Ind.Ct.App. 1988). The regulation clearly includes "modification" among the services provided by the Bureau and the attorneys with whom it contracts.

Finally, if modifications were not authorized, the Bureau would find it impossible to comply with all of its statutory mandates. The General Assembly specifically directed the Bureau to follow federal requirements in developing and implementing the state's plan for the administration of Title IV–D. "The bureau shall consider and follow the federal requirements imposed by statute and regulation governing the formation of the state plan." IND.CODE § 12–17–2–14 (1998). "The plan must comply with all provisions of state law and with the federal statutes and regulations governing the program." IND.CODE § 12–17–2–6 (1998). Federal statutes prescribe that state plans for support must "provide services relating to the establishment of paternity or the establishment, modification, or enforcement of child support ob-

ligations...." 42 U.S.C. § 654(4)(A) (Supp. II 1996).[4] Federal regulations require state programs to implement a process for review and adjustment of support orders. 45 C.F.R. § 303.8 (1998). In sum, federal laws and regulations clearly anticipate that adjustments may be made to support orders and that state programs will have a role in securing those adjustments. The explicit legislative directive to comply with federal requirements and thereby qualify for federal funding constitutes yet another persuasive reason to construe the statute as the State does, and as we do, to permit assistance in modification proceedings.

### Conclusion

The State, acting through attorneys hired by the Child Support Bureau, has the statutory authority to represent parents in child support modification actions. The decision of the Court of Appeals with regard to all other issues raised by the parties on appeal is summarily affirmed. Ind. Appellate Rule 11(B)(3).

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.

---

4. This provision was amended in 1996 to include the list of required services. Although this list of services was not federal law at the time of the Mother's first petition, other provisions required that state plans contain procedures for "review" of support orders to determine whether an adjustment of the support obligation was warrant-

ed. 42 U.S.C. § 666(10) (1994 & Supp. II 1996). Whether the term "review" or "modification" is used by the statute is irrelevant for these purposes. Both plainly contemplate the ability of a contracted attorney to take part in proceedings to make adjustments to a support order.