STATE of Indiana, Appellant
(Defendant Below),

v.

John C. DUGAN, Appellee
(Plaintiff Below).

No. 49S02–0212–CR–671.

Supreme Court of Indiana.

Aug. 22, 2003.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Richard Kiefer, Darlene Seymour, Kiefer & McGoff, Indianapolis, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

The State indicted officer John C. Dugan, Jr. of the Indiana State Excise Police, for official misconduct. It alleged that he accepted gratuities from the owner of two companies to which the Alcoholic Beverage Commission had issued permits to sell alcoholic beverages. Was it proper for the State to charge Dugan with official misconduct? We conclude it was.

### Facts and Procedural History

The charging instrument alleged that Dugan "accompanied his supervisor, the Superintendent of the Indiana State Excise Police, for the purposes of socializing, drinking alcoholic beverages, dining and engaging in sexual activity while on duty." (App. at 12.) Count I charged Dugan with ghost employment, a class D felony. Counts II and III charged Dugan with official misconduct, a class A misdemeanor. The official misconduct charges alleged that on February 8 and 12, 1999, Dugan violated Ind.Code § 7.1–5–5–2 for having accepted gratuities from Bradley Hirst, sole owner of two companies that the Indiana State Alcoholic Beverage Commission ("ABC") issued permits to sell alcoholic beverages.[1]

---

1. The ABC has now become the Alcohol and Tobacco Commission. *See* Ind.Code Ann.

§ 7.1–2–1–1 (West 1982 & Supp.2002) (as amended by P.L. 204–2001, Sec. 18).

Dugan moved to dismiss the entire indictment on procedural grounds. He moved to dismiss Counts II and III on substantive grounds, contending that because Hirst had already received the permit from the ABC, the statute was inapplicable since it prohibits receiving gratuities from someone "applying for or receiving a permit," not a holder of a permit.

The trial court declined to dismiss the entire indictment, but granted Dugan's motion to dismiss Counts II and III. It subsequently granted the State's motion to dismiss Count I.

The State appealed. The Court of Appeals affirmed the trial court's dismissal of the official misconduct counts, on a rationale different than that expressed by the trial court. *State v. Dugan,* 769 N.E.2d 235, 238 (Ind.Ct.App.2002). It did not address whether Ind.Code § 7.1–5–5–2 as written applies to *holders* of permits; rather it upheld the trial court's decision on grounds that "the Official Misconduct statute was not the appropriate statute with which to charge Dugan" because there was another statute applicable. *Id.*

We grant transfer to determine: 1) whether Ind.Code § 7.1–5–5–2 is applicable to "holders" of a permit and 2) whether the State has discretion in charging a defendant with any applicable statute where multiple statutes are applicable.

## I. Does "Receiving" Mean "Holding"?

 The State charged Dugan with acting in contravention to Ind.Code § 7.1–5–5–2, which makes it unlawful for a commissioner, officer or employee of the commission, or member of a local board, to receive a gratuity from a person "applying for or receiving" a permit.[2] Everyone agrees that "applying for" refers to *applicants.* It is undisputed that Hirst was not applying for a permit when the alleged violation occurred. What is at issue here is the term "receiving."

While Dugan claims he did not violate § 7.1–5–5–2 because it does not apply to someone already in possession of a permit, the State contends that "receiving" a permit is an ongoing process—that the permittee's holding of a permit is a continuing action of "receiving" a permit. Essentially, the State argues that the term "receiving" includes permit *holders.*

The trial court concluded that the language in Ind.Code § 7.1–5–5–2 was unclear, and that if the legislature intended to criminalize the conduct described in Counts II and III involving a person *holding* a permit, they could have so stated. Put another way, it agreed with Dugan that § 7.1–5–5–2 does not prohibit such officials from receiving gratuities from persons who already hold permits.

 The primary goal in statutory construction is to determine, give effect to, and implement the intent of the legislature. *Collier v. Collier,* 702 N.E.2d 351 (Ind.1998). "[W]ords are to be given their plain, ordinary, and usual meaning, unless a contrary purpose is shown by the statute itself." *Cox v. Worker's Comp. Bd.,* 675 N.E.2d 1053, 1057 (Ind.1996). It is just as important to recognize what the statute does not say as it is to recognize what it does say. *Clifft v. Indiana Dept. of State Revenue,* 660 N.E.2d 310 (Ind.1995). Because courts must give deference to such intent whenever possible, "courts must consider the goals of the statute and the

---

2. The section as a whole reads:

It is unlawful for a commissioner, an officer or employee of the commission, or a member of a local board, to receive a gratuity, commission, or profit of any kind from a person applying for or receiving a permit under this title. A person who violates the provisions of this section also shall be dismissed as provided in this title.

Ind.Code Ann. § 7.1–5–5–2 (West 1982).

reasons and policy underlying its enactment." *MDM Inv. v. City of Carmel,* 740 N.E.2d 929, 934 (Ind.Ct.App.2000).

The legislature itself has articulated the purposes of Title 7.1: to protect the economic welfare, health, peace and morals of the people and to regulate and limit the manufacture, sale, possession and use of alcohol and alcoholic beverages. Ind.Code Ann. § 7.1–1–1–1(a), (b) (West 1982). It is clear that these purposes apply equally, if not more so, to *holders* of permits as to those applying for a permit.

To accomplish such purposes, the ABC issues permits which entitle the permit holder to deal in alcoholic beverages. *See* Ind.Code Ann. §§ 7.1–3–1–1, 7.1–1–3–29 (West 1982). This entitlement, however, is hardly unlimited. The state excise police officers are ABC employees charged with the duty and power to enforce the provisions of Title 7.1. Ind.Code Ann. §§ 7.1–2–2–9 (West 1982 & Supp.2002). As such, they can revoke or suspend a permit for a violation of one of the provisions. Ind. Code Ann. § 7.1–3–23–2 (West 1982). There are also statutory prohibitions imposed upon ABC employees so as to maintain the integrity of the commission. One such prohibition is that contained in Ind. Code § 7.1–5–5–2 (unlawful to receive gratuity, commission, or profit of any kind from a person applying for or receiving a permit under this title).

Dugan points out that other provisions of Title 7.1, particularly the section immediately preceding the one at issue, Ind. Code § 7.1–5–5–1, include the term "permittee," which is defined as a "person who is the holder of a valid permit." On such basis, Dugan argues that the fact that Ind.Code § 7.1–5–5–2 says, "applying for or *receiving* a permit" and omits the term

"permittee" demonstrates that the legislature purposely excluded permittees.

Actually, Title 7.1 uses a variety of terms to describe someone who possesses a permit. It includes phrases such as "holder of a permit," "person or entity that has a permit," or "a person to whom a permit has been issued."[3] Thus, omitting the word "permittee" is not by itself compelling proof of the legislature's objective.

We must consider the goals and policy underlying the statute's enactment. The General Assembly has told us at least one thing concerning its intent: that the provisions of Title 7.1 should be liberally construed. Ind.Code Ann. § 7.1–1–2–1 (West 1982).

Two interpretations can be reasoned by the fact that the provision does not use the word "permittee." The legislature's intent could have been to include only persons in the process of applying for a permit, or it could have intended to make the provision all-inclusive, meaning applicants *and* holders.

The first interpretation gives the word *receiving* its literal meaning: "coming into possession of." Merriam Webster's Collegiate Dictionary 1894 (10th Ed.1993). Under this approach, the statute would apply to a person only from the moment he or she fills out an application form to the moment the permit is physically handed over to the applicant (i.e., the moment when the applicant is "receiving" the permit).

Under the second interpretation, one could deem "receiving" to mean someone *receiving the benefits of a permit,* which would include a permit holder. Thus the

---

**3.** *See e.g.,* Ind.Code Ann. §§ 7.1–2–1–12, 7.1–3–1–20, 7.1–3–1–21 (West 1982 & Supp. 2002).

statutory prohibition would be effective upon both applicants and holders.

■■■ Because statutes are examined as a whole, it is often necessary to avoid excessive reliance on a strict literal meaning or the "selective reading of individual words." *Collier v. Collier* 702 N.E.2d 351, 354 (Ind.1998). The legislature is presumed to have intended the language used in the statute to be applied logically and not to bring about an unjust or absurd result. *Riley v. State*, 711 N.E.2d 489 (Ind.1999). Thus, we should consider the objects and purposes of the statute as well as the effects and repercussions of such an interpretation. *State v. Windy City Fireworks, Inc.*, 600 N.E.2d 555, 558 (Ind.Ct. App.1992), adopted by 608 N.E.2d 699 (Ind.1993).

Dugan argues that "the word 'receiving' must be given its plain and ordinary meaning," and someone who already has a permit is not "coming into the possession of a permit." (Appellee Br. at 16–17.) He also asserts that a person "receiving" a permit is "someone in the process of being issued a permit, but is not yet a permit holder." (Appellee Br. at 14.)

Interpreting "receiving" to mean someone in the process of being issued a permit, but is not yet a permit holder, would render the term redundant and hence useless since a person "applying for" a permit is also someone in the process of being issued a permit but not yet a permit holder. Had the legislature intended this section to apply only to people in the process of being issued a permit but not yet a permit holder, it could have just as easily stopped at "applying for." The fact that it went on to add "or *receiving*" suggests it intended to include more than just applicants.

Moreover, the effect of using the literal definition of "receiving" would be that an ABC employee would have to be handing over the permit to the applicant with one hand and accepting the gratuity with the other hand in order to violate the statute. Any point after that would fall outside the statutory prohibition because the person would no longer be *receiving* a permit; he would now be a permit holder. This would be an illogical result.

The second interpretation better effectuates the purposes of the statute, namely regulating activities concerning alcoholic beverages. Such purposes are premised upon activities such as the sale, possession, and use of alcoholic beverages. In order for Ind.Code § 7.1-5-5-2 to be in line with the purposes of Title 7.1, it must also apply to holders of permits because a "permit" is what allows such activities to take place. A permit entitles its holder "to manufacture, rectify, distribute, transport, sell, or otherwise deal in alcoholic beverages." Ind.Code Ann. § 7.1-1-3-29 (West 1982).

As Dugan points out, such permits are valuable and limited in number. A permit is only valid for one year, unless otherwise stated in Title 7.1. Ind.Code Ann. § 7.1-3-1-3 (West 1982 & Supp.2002). At the end of the year, the permit is fully expired and null and void, and the permittee must go through the same application process as any other person applying for the first time in order to renew his permit. *Id.* Thus, a person renewing a permit is in effect obtaining a new one.

The General Assembly was clearly worried about officers being improperly influenced by people seeking a permit. Because a holder of a permit must renew his permit every year, he stands in the same shoes as an applicant. A permit holder may also exert improper influence on an ABC officer so as to secure renewal of his permit. There is no other statute in Title 7.1 that prohibits ABC officers or employees from accepting gratuities from permit

holders. Considering the value of such permits, we find it hard to believe that the legislature "purposely excluded from the statute persons already in possession of a permit," as Dugan contends. (*See* Appellee Pet. for Transfer at 3.) Further, we cannot conceive of any persuasive public policy reason for excluding permit holders.

Liberally construing the provisions in Title 7.1 and analyzing its delineated purposes, we opt for the second liberal interpretation and conclude that the legislature's use of the term "receiving" indicates its intent to prohibit acceptance of gratuities by an ABC employee or officer from someone already receiving the benefits of a permit, namely a permit "holder" or permittee. The alternate interpretation would allow an officer to freely accept gratuities by merely waiting until the permittee holds the permit in hand before the ABC employee takes a payoff. We do not think the legislature intended such a result. We therefore conclude that the trial court erred in dismissing the State's official misconduct charges against Dugan.

## II. Charging Discretion

■ We now turn to Dugan's second argument. Based on the contention that Dugan violated § 7.1–5–5–2, the State charged Dugan with official misconduct pursuant to Ind.Code § 35–44–1–2, which provides in pertinent part: "A public servant who: (1) knowingly or intentionally performs an act that he is forbidden by law to perform; ... commits official misconduct, a Class A misdemeanor."

On appeal, the court held "the official misconduct statute was not the appropriate statute with which to charge Dugan." *Dugan,* 769 N.E.2d at 238. It said that "while Ind.Code § 35–44–1–2 may generally apply to a person who violates Ind.Code § 7.1–5–5–2, Ind.Code § 7.1–5–1–8 is intended to cover violations of Title 7.1 that do not have a specific penalty already at-tached." *Id.* Because § 7.1–5–5–2 does not provide a specific punishment for the prohibited conduct, the Court of Appeals held that § 7.1–5–1–8 was the appropriate statute with which to charge Dugan. Indiana Code § 7.1–5–1–8 provides: "A person who violates a provision of this title for which no other penalty is provided commits a Class B misdemeanor."

■ The State contends that it has discretion concerning the filing of charges. We agree. Where multiple statutes are applicable under given circumstances, the State has the discretion of prosecuting under any or all of the applicable statutes. *See Hendrix v. State,* 759 N.E.2d 1045 (Ind.2001); *Skinner v. State,* 736 N.E.2d 1222 (Ind.2000); *Adams v. State,* 262 Ind. 220, 314 N.E.2d 53, 56 (1974). Here, both Ind.Code §§ 7.1–5–1–8 and 35–44–1–2(1) can apply. The State chose to charge Dugan under the latter statute, which proscribes official misconduct.

■ Although the language of Ind. Code § 35–44–1–2(1) is broad and general, the heart of the issue in an official misconduct charge is explicit: whether the act was done by a public official in the course of his official duties. *See Daugherty v. State,* 466 N.E.2d 46 (Ind.Ct.App.1984) (Judge Ratliff concurring). There must be a connection between the charge and the duties of the office. A charge for misconduct must rest upon criminal behavior that is related to the performance of official duties. *See e.g. State v. Schultz,* 71 N.J. 590, 367 A.2d 423 (1976) (forgeries of endorsements on checks received in payment of traffic fines which forgeries were done by clerk receiving the checks). Needless to say, if the misconduct bears no relation to the official duties, there is no official misconduct. *Id. See e.g. Kauffman v. Glassboro,* 181 N.J.Super. 273, 437 A.2d

334 (Ct.App.Div.1981) (burglary by a police officer held unrelated to official duties).

In the case at bar, Dugan was employed as a state excise police officer for the Indiana ABC. The Indiana State Excise Police is the enforcement arm of the ABC, charged with the primary responsibility of policing the alcoholic beverage industry in Indiana.[4] The excise police enforce the laws that regulate permit holders—those who are legally permitted to sell and serve alcoholic beverages, as well as those not legally entitled to sell alcoholic beverages.[5]

Indiana Code § 7.1–5–5–2 makes it unlawful for an officer of the commission to receive a gratuity from a person applying for or receiving a permit to sell alcoholic beverages. A violation of Ind.Code § 7.1–5–5–2 obviously bears a significant connection to the official duties of an excise officer. That there is another equally applicable statute is of no consequence. Therefore, it was appropriate and within the State's discretion to decide to charge Dugan with official misconduct.

### Conclusion

We reverse the judgment of the trial court and remand with instructions to reinstate Counts II and III.

SULLIVAN and BOEHM, JJ., concur.

RUCKER, J., concurs as to Part II.

DICKSON, J., dissents with separate opinion in which RUCKER, J., joins.

DICKSON, Justice, dissenting.

Despite the majority's elaborate analysis of the interpretation of the word "receiving" as it appears in Indiana Code § 7.1–5–5–2, I believe that this criminal statute must be narrowly construed, in accordance with several well recognized due process principles-variously framed in our jurisprudence as the "void for vagueness doctrine," the "rule of lenity," and the "fair notice requirement."

The "void for vagueness" doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903, 909 (1983). The "fair notice" requirement "give[s] a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989, 996 (1954). The rule of lenity is premised on two ideas: first, " 'a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed' " and second, legislatures and not courts should define criminal activity. *United States v. Bass,* 404 U.S. 336, 348, 92 S.Ct. 515, 522, 30 L.Ed.2d 488, 496–97 (1971) (*quoting McBoyle v. United States,* 283 U.S. 25, 27, 51 S.Ct. 340, 341, 75 L.Ed. 816, 818 (1931)). These principles work in tandem towards one result: the strict construction of penal statutes. *See Healthscript, Inc. v. State,* 770 N.E.2d 810, 815–16 (Ind.2002); *Ellis v. State,* 736 N.E.2d 731, 737 (Ind.2000).

Because I believe that the majority's expansion of the word "receiving" to encompass the holder of a permit is a viola-

---

**4.** *See* www.drugs.indiana.edu/indiana/excise.html.

**5.** *Id.*

tion of these principles, I respectfully dissent.

RUCKER, J., concurs.