# FOR PUBLICATION



ATTORNEYS FOR APPELLANT:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILANENDER**
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**LINDA L. PENCE**
**DAVID J. HENSEL**
**JULIE SMITH**
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

STATE OF INDIANA,                    )
                                     )
    Appellant-Plaintiff,         )
                                     )
        vs.             )    No.  49A02-1309-CR-756
                                     )
DAVID LOTT HARDY,                    )
                                     )
    Appellee-Defendant.          )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable William J. Nelson, Judge
Cause No. 49F18-1112-FD-86926

**April 29, 2014**

**OPINION – FOR PUBLICATION**

**PYLE, Judge**

## STATEMENT OF THE CASE

The State of Indiana appeals the trial court's dismissal of its charges against David Lott Hardy ("Hardy") for four counts of Class D felony official misconduct.[1]

We affirm.

## ISSUE

Whether the trial court abused its discretion when it granted Hardy's motion to dismiss.

## FACTS[2]

Hardy is the former Chairman of the Indiana Utility Regulatory Commission ("IURC"). During his time as Chairman, Hardy was involved in the approval process for a petition filed by Duke Energy Indiana ("Duke") and Southern Indiana Gas and Electric Company, d/b/a Vectren Energy Delivery of Indiana ("Vectren"), to build an integrated gasification combined cycle generating facility ("IGCC Project") in Edwardsport, Indiana. In their petition, Duke and Vectren also asked the IURC to approve ratemaking changes so that they could recover the project's construction, operation, and maintenance costs.

On December 9, 2011, the Marion County grand jury indicted Hardy on three charges of Class D felony official misconduct for matters relating to his performance on the IGCC Project. Four days later, the State moved to amend the indictment to add a fourth charge of Class D felony official misconduct. The trial court granted the motion

---

[1] Ind. Code § 35-44-1-2.

[2] We held an oral argument in this case on March 31, 2014 in the Supreme Court Courtroom. We thank counsel for their preparation and presentation.

on January 23, 2012. The four charges were based on ethical and administrative, but not criminal, violations that Hardy allegedly committed between 2008 and 2010.

During that time frame, the official misconduct statute provided that a public servant commits official misconduct if that person "knowingly or intentionally performs an act that the public servant is *forbidden by law* to perform." I.C. § 35-44-1-2 (2010) (emphasis added). However, on July 1, 2011, after Hardy's indictment, the Indiana Legislature amended the statute to provide that a person commits official misconduct if that person "knowingly or intentionally . . . commits an *offense*" in the performance of his or her official duties. I.C. § 35-44.1-1-1 (emphasis added). The Indiana Code defines "offense" as "a crime." I.C. § 35-41-1-19.

On April 4, 2012, Hardy filed a motion to dismiss the indictment. He cited several pre-2011 court cases that he argued interpreted the official misconduct statute as requiring an underlying offense to be criminal in nature. He then pointed to the discrepancy between these narrow court interpretations and the broad language of the prior official misconduct statute as evidence that the legislature's 2011 amendment was a remedial amendment meant to conform the statutory language to court precedent. Based on this interpretation, he argued that the amended version of the statute should apply retroactively to him and that the trial court should dismiss his charges because they were not founded on criminal offenses.

Hardy also raised two constitutional arguments: (1) that the State's application of the official misconduct statute rendered it unconstitutionally vague and a nullity; and (2) that Counts II-IV were based on an unconstitutional delegation of legislative authority.

3

Finally, Hardy argued that Counts II-IV failed to state his offenses with sufficient certainty.

The trial court held a hearing on the motion on June 11, 2012. On June 25, 2012, it found that Counts II-IV of the indictment failed to state a claim with sufficient certainty, but it allowed the State to file an amended indictment to cure the defect. The second amended indictment, which the State filed on July 9, 2012, detailed Hardy's four charges of Class D felony official misconduct as follows:

COUNT I: OFFICIAL MISCONDUCT

On or about and between April 2010 and August 3, 2010, DAVID LOTT HARDY, Chairman of the Indiana Utility Regulatory Commission and supervisor of Scott Storms, did knowingly aid and abet Scott Storms by communicating with employees of Duke Energy regarding Scott Storms' prospective employment while allowing Scott Storms to perform an act that Scott Storms was forbidden by law to perform, that is: Scott Storms, an administrative law judge with the Indiana Utility Regulatory Commission, had a conflict of economic interest (I.C. [§] 4-2-6-9), in that he knowingly participated in decisions and/or votes when Scott Storms had a financial interest in the outcome of the matter arising from prospective employment as counsel for Duke Energy;

COUNT II: OFFICIAL MISCONDUCT

On or about and between March 17, 2008, and October 5, 2010, DAVID LOTT HARDY, a public servant, to wit: the Chairman of the Indiana Utility Regulatory Commission, did knowingly perform an act that DAVID LOTT HARDY was forbidden by law to perform, that is: DAVID LOTT HARDY received a communication in violation of I.C. [§] 8-1-1-5(e), to wit: communications from Jim Turner and/or Jim Stanley on or about March 17, 2008, regarding revised cost estimates of the Edwardsport IGCC Project, and failed to disclose such communication in the manner required by 170 IAC 1-1.5-6, to wit: by failing to tender to the record of the proceeding a memorandum stating the substance of the oral communications received, all oral responses made and the identity of each person from whom the communication was received and advise all parties that such items had been tendered to the record;

4

COUNT III:  OFFICIAL MISCONDUCT

On or about and between February 24, 2010, and October 5, 2010, DAVID LOTT HARDY, a public servant, to wit:  the Chairman of the Indiana Utility Regulatory Commission, did knowingly perform an act that DAVID LOTT HARDY was forbidden by law to perform:  that is:  DAVID LOTT HARDY received a communication in violation of I.C. [§] 8-1-1-5(e), to wit:  communications from James Rogers, Jim Turner, and/or Jim Stanley on or about February 24, 2010, regarding revised cost estimates of the Edwardsport IGCC Project and/or contemplated mitigation procedures to minimize the impact of increased cost estimates upon energy consumers, and failed to disclose such communication in the manner required by 170 IAC 1-1.5-6, to wit:  by failing to tender to the record of the proceeding a memorandum stating the substance of the oral communication received, all oral responses made and the identity of each person from whom the communication was received and advise all parties that such items had been tendered to the record;

COUNT IV:  OFFICIAL MISCONDUCT

On or about and between August 19, 2010, and October 5, 2010, DAVID LOTT HARDY, a public servant, to wit:  the Chairman of the Indiana Utility Regulatory Commission, did knowingly perform an act that DAVID LOTT HARDY was forbidden by law to perform, that is:  DAVID LOTT HARDY received a communication in violation of I.C. [§] 8-1-1-5(e), to wit:  communication from Michael Reed on or about August 19, 2010, regarding settlement negotiations involving pending proceedings before the Indiana Utility Regulatory Commission in regard to the Edwardsport IGCC project, and failed to disclose such communication in the manner required by 170 IAC 1-1.5-6, to wit:  by failing to tender to the record of the proceeding a memorandum stating the substance of the oral communications received, all oral responses made and the identity of each person from whom the communication was received and advise all parties that such items had been tendered to the record;

All of which is contrary to statute and against the peace and dignity of the State of Indiana.

(App. 204-06).

On July 20, 2012, Hardy filed a motion to dismiss the second amended indictment, incorporating the arguments from his first motion to dismiss. The trial court denied the motion on July 30, 2012, and, on August 27, 2012, Hardy filed a motion to certify the order for interlocutory appeal. The trial court granted the motion, but this Court declined to accept jurisdiction over the interlocutory appeal and also denied Hardy's subsequent petition for a rehearing.

On January 10, 2013, the trial court judge recused himself, and the case was reassigned. Subsequently, Hardy filed a renewed motion to dismiss. He raised as new evidence a September 2010 report the Indiana Inspector General had submitted to the Indiana General Assembly. In the report, the Inspector General characterized the official misconduct statute's phrase "forbidden by law" as ambiguous. Noting this ambiguity, the Inspector General requested that the legislature amend the statute to clarify that an underlying offense for official misconduct must be criminal in nature. In his renewed motion to dismiss, Hardy argued that this report, in combination with the legislature's subsequent 2011 amendment, was evidence of the legislature's intent for its amendment to be remedial in nature, and that the trial court should apply the amendment retroactively to him. Hardy also renewed the arguments from his previous motions to dismiss. The trial court granted Hardy's motion with respect to all four counts, agreeing that the Inspector General's report was evidence that the legislature had intended its 2011 amendment to be remedial and that the amendment should apply retroactively to Hardy.

The State now appeals. We will provide additional facts as necessary.

6

On appeal, the State argues that the trial court erred in retroactively applying the amended version of the official misconduct statute to Hardy because the legislature's amendment was not remedial in nature and because there was no compelling reason to give it retroactive effect. In response, Hardy argues that the amendment was remedial and, regardless, should still have retroactive effect. Alternatively, Hardy contends that we should affirm the trial court on any basis supported by the record. He reiterates the arguments he raised in his motions to dismiss, including that: (1) the State's application of the prior official misconduct statute to the instant case renders the law unconstitutionally vague; (2) Counts II-IV are improperly based on an unconstitutional delegation of authority; and (3) Counts II-IV do not properly allege a crime.

Throughout these proceedings, neither party has disputed that the previous version of the statute was in effect when Hardy allegedly committed the violations underlying his charges, and neither party has disputed the fact that none of Hardy's charges are based on criminal offenses. Accordingly, the issues before us are purely legal. We generally review a trial court's decision on a motion to dismiss under an abuse of discretion standard, but we do not do so when the ruling depends on the interpretation of a statute or other questions of law. *See McCown v. State*, 890 N.E.2d 752, 756 (Ind. Ct. App. 2008). We evaluate questions of law under a *de novo* standard and do not owe any deference to the trial court's legal conclusions. *Id.*

We conclude that the trial court properly granted Hardy's motion to dismiss, although our rationale differs from the trial court's. In its order granting Hardy's motion,

7

the trial court found that the Inspector General's report was conclusive evidence that the legislature had intended its 2011 amendment to be remedial in nature. Based on this finding, the trial court determined that the current amended version of the official misconduct statute should apply retroactively to Hardy. However, we need not go so far as to interpret the Inspector General's report or the nature of the 2011 amendment because Hardy's charges were also improper under the former version of the statute.

Our conclusion is based on the Indiana Supreme Court's decision in *State v. Dugan*, 793 N.E.2d 1034 (Ind. 2003), which Hardy cited in all of his motions to dismiss. *Dugan* concerned an Indiana State Excise Police officer who was charged with official misconduct for allegedly accepting gratuities from the owner of two companies that were permitted to sell alcoholic beverages. *See id* at 1035. The State's charging information alleged that Dugan violated Indiana Code § 7.1-5-5-2, which makes it unlawful for an officer of the Indiana State Alcoholic Beverage Commission to receive a gratuity from a person "applying for or receiving a permit to sell alcoholic beverages." *Id.* at 1040. On appeal, the Supreme Court determined that the State had properly charged Dugan with official misconduct. *Id.* In its opinion, the Court explained the requirements for the official misconduct statute as follows:

> Although the language of Ind. Code § 35-44-1-2(1) is broad and general, the heart of the issue in an official misconduct charge is explicit: whether the act was done by a public official in the course of his official duties. There must be a connection between the charge and the duties of the office. A charge for misconduct must rest upon *criminal behavior* that is related to the performance of official duties. Needless to say, if the misconduct bears no relation to the official duties, there is no official misconduct.

*Id.* at 1039 (internal citations omitted) (emphasis added). As this passage demonstrates, the Supreme Court interpreted the "forbidden by law" language of the official misconduct statute as requiring an underlying violation to be criminal in nature. *See id.*

The State dismisses that interpretation here, arguing that it was merely *dicta*. *Obiter dictum—dicta—*refers to statements that a court makes that are not necessary in the determination of the issues presented. *Koske v. Townsend Engineering Co.*, 551 N.E.2d 437, 443 (Ind. 1990). They are not binding and do not become the law, although we may consider them persuasive. *Id.*; BLACK'S LAW DICTIONARY 1102 (8th ed. 2004). In support of its argument, the State claims that the dispositive issue in *Dugan* concerned prosecutorial discretion. We agree with the State that one of the issues on appeal concerned prosecutorial discretion, but we cannot agree that the Court's discussion of the official misconduct statute was *dicta*.

Before the Supreme Court granted transfer in *Dugan*, this Court held that the State should have charged Dugan under a different statute than the official misconduct statute and that the charges were, thus, improper. *See Dugan*, 793 N.E.2d at 1039. We noted that Indiana Code § 7.1-5-1-8 was intended to cover violations of Indiana Code Title 7.1 that did not have a specific penalty attached. *Id.* Because Indiana Code § 7.1-5-5-2, the statute that Dugan had allegedly violated, did not have a specific penalty attached, we concluded that the State should have charged Dugan under Section 7.1-5-1-8 instead of the official misconduct statute. *See id.* Accordingly, one issue that the Supreme Court addressed on appeal was whether the State had the discretion to charge Dugan under either of two, equally applicable statutes. *See id.* The Supreme Court held that the State

9

did have this discretion. *Id.* at 1040. As a result, we agree with the State that prosecutorial discretion was one issue on appeal.

However, prosecutorial discretion was not the only issue. Because the Supreme Court determined that the State did have discretion in choosing the statute under which to charge Dugan, the Court then had to address whether or not the State's original charges under the official misconduct statute were valid. *See id.* It was in this context that the Court wrote the above quoted language where it analyzed the official misconduct statute's requirements. *See id.* at 139. As the Supreme Court's analysis of the statute's language was necessary for its determination of the issues in *Dugan*, we find that its interpretation of "forbidden by law" was not *dicta.*

*Dugan*'s subsequent history supports this conclusion. Since *Dugan,* we have cited the Supreme Court's language in multiple cases, including *Kinnon v. State*, 908 N.E.2d 666, 668 (Ind. Ct. App. 2009); *Heinzman v. State*, 895 N.E.2d 716, 723-24 (Ind. Ct. App. 2008), *trans. denied*; and *State v. Lindsay*, 862 N.E.2d 314, 319 (Ind. Ct. App. 2007), *trans. denied*. Also, the State was not able to advise us of any cases since *Dugan* where the State has charged a defendant with official misconduct based on civil, ethical, or administrative violations, rather than criminal offenses.[3] In light of this history, it is clear

---

[3] The State cites *Moran v. State*, 477 N.E.2d 100 (Ind. Ct. App. 1985), in which Moran's charges of official misconduct were based on underlying administrative violations. However, the Court decided *Moran* prior to the Supreme Court's decision in *Dugan.* We are bound by our Supreme Court's decisions, and its precedent is binding until it is changed by the Supreme Court or legislative enactment. *Culbertson v. State*, 929 N.E.2d 900, 906 (Ind. Ct. App. 2010), *trans. denied.* Accordingly, we are bound by *Dugan* rather than *Moran*. Moreover, because we ultimately dismissed Moran's charges because they did not state his offenses with sufficient certainty, our discussion in Moran regarding the official misconduct statute was *dicta. See Moran*, 477 N.E.2d at 104.

that *Dugan* unequivocally established that a charge of official conduct must be based on a criminal offense. *See Dugan*, 793 N.E.2d at 1039.

The Supreme Court's holding in *Dugan* was controlling law eight years prior to the legislature's 2011 amendment, as well as during the time period when each of the violations underlying Hardy's charges occurred. Because our Supreme Court has interpreted the official misconduct statute to require a charge of official misconduct to rest upon criminal behavior that is related to the performance of official duties, we conclude that the trial court did not abuse its discretion when it dismissed the State's charges against Hardy. We need not address any of the State's or Hardy's remaining arguments.

Affirmed.

MATHIAS, J., and BRADFORD, J., concur.