## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 16 2019, 9:07 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Yvette M. LaPlante
Keating & LaPlante, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David Dimmett,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

July 16, 2019

Court of Appeals Case No.
19A-CR-123

Appeal from the Vanderburgh
Superior Court

The Honorable Robert J. Pigman,
Judge

Trial Court Cause No.
82D03-1707-F2-4523

**Crone Judge.**

## Case Summary

[1] A jury convicted David Dimmett of two level 2 felony drug dealing offenses, level 3 felony narcotics possession, two counts of level 6 felony narcotics possession, and one misdemeanor count each of narcotics possession and marijuana possession. Dimmett subsequently pled guilty to a habitual offender count, and the trial court sentenced him to an aggregate thirty-eight-year executed term. He now appeals, claiming that the trial court abused its discretion in admitting certain evidence of prior bad acts and challenging the validity of his guilty plea to the habitual offender count. He also contends that his sentence is inappropriate in light of the nature of his offenses and his character. We affirm.

## Facts and Procedural History

[2] On July 26, 2017, Vanderburgh County Joint Drug Task Force officers detained Dimmett outside his ex-girlfriend's residence and engaged in a consensual search of his person. The search produced two or three bags full of large quantities of drugs, including seventy-four Percocet pills, fifty-nine Adderall pills (amphetamine), nineteen tablets containing buprenorphine (Suboxone), two and a half oxycodone pills, two halves of an oxymorphone pill, one Viagra pill, an unidentified green pill, and a cell phone. Dimmett consented to the search of his truck and residence. In his truck, officers found marijuana and a digital scale, and inside the residence they found a marijuana blunt and a pill later determined to be Trazadone.

[3]     The officers arrested Dimmett and took him to the county jail. During a recorded jailhouse call, Dimmett's father encouraged him to turn his life around and get out of the frame of mind of selling drugs. Dimmett admitted that he needed to overcome the "madness" and "sickness." State's Ex. 12. A search of Dimmett's cell phone produced several text messages to various individuals referencing drugs by commonly used, first-letter abbreviations, e.g., "Ps are available" and "Just got our Ps," and a reply text stating, "Did you get some As too?" State's Ex. 14. Dimmett's outgoing text messages also indicate that he changed his phone number. *Id.* Detective Shelly King ran an INSPECT report to see whether Dimmett had a valid prescription on file for any of the pills recovered during the search and found that he did not.

[4]     The State charged Dimmett with level 2 felony dealing in narcotics, level 2 felony dealing in a controlled substance, level 4 felony dealing in a controlled substance, level 5 felony dealing in a controlled substance (later dismissed on the State's motion), two counts of level 6 felony narcotics possession, and class A misdemeanor marijuana possession. The State subsequently filed one count of level 3 felony narcotics possession and a habitual offender count. A bifurcated trial was scheduled. At a pretrial hearing, the trial court granted the State's motion to introduce evidence under Indiana Evidence Rule 404(b) to the effect that Dimmett had shared opiates with his friend and fellow addict Michael Tempco within a timeframe that would not be considered stale. Tempco testified at trial over Dimmett's objection.

[5] The jury found Dimmett guilty of the two level 2 felony dealing counts, level 3 felony narcotics possession (ultimately vacated by the trial court), two counts of level 6 felony narcotics possession, class A misdemeanor possession of a controlled substance (as a lesser included offense of the level 4 felony dealing count), and class B misdemeanor marijuana possession. Before the habitual offender phase, the following exchange occurred:

> THE COURT: …. There's an Habitual Offender Enhancement alleging some prior convictions. Is that proceeding necessary?
>
> [DEFENSE COUNSEL]: It is not, Your Honor.
>
> THE COURT: Okay. Mr. Dimmett you have a right to another trial essentially. You can present evidence, call witnesses to testify, cross examine anybody who testifies against you like we did during the trial on the issue of whether you have those prior convictions. Your Counsel has represented to me that you were going to admit that you have those, is that correct?
>
> THE DEFENDANT: Yes sir.
>
> THE COURT: Is that a free and voluntary act on your part?
>
> THE DEFENDANT: Yes sir.
>
> THE COURT: No one's forced you to do that and you …
>
> THE DEFENDANT: (Interrupting) No sir.
>
> THE COURT: Okay. All right.

Tr. Vol. 3 at 69-70.

During sentencing, the trial court identified as aggravating circumstances Dimmett's criminal history and his prior dealing convictions. The court specifically found no mitigating circumstances. The court sentenced Dimmett to twenty years for his level 2 felony narcotics dealing conviction, with a fixed additional eighteen-year term for the habitual offender finding, a concurrent twenty-year term for level two felony dealing in a controlled substance, three concurrent one-year terms for the level 6 felonies and class A misdemeanor, and a concurrent 180-day term for the class B misdemeanor, for an aggregate sentence of thirty-eight years executed. Dimmett now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

## Section 1 – The trial court did not commit reversible error in admitting evidence that Dimmett shared drugs with a fellow addict.

Dimmett challenges the trial court's admission of Tempco's testimony that Dimmett had shared opiates with him. We review evidentiary rulings for an abuse of discretion resulting in prejudicial error. *Williams v. State*, 43 N.E.3d 578, 581 (Ind. 2015). An abuse of discretion occurs when the trial court's ruling is either clearly against the logic and effect of the facts and circumstances before it or the court misinterprets the law. *Id*. In determining whether improperly admitted evidence has prejudiced the defendant, we assess the probable impact of that evidence on the jury in light of all the other properly admitted evidence.

*Id.* If independent, properly admitted evidence of guilt supports the conviction, the error is harmless. *Id.*

[8]  Dimmett maintains that the challenged testimony is inadmissible evidence of prior bad acts under Indiana Evidence Rule 404(b).[1] The State filed a notice of intent to introduce evidence that Dimmett had recently shared opiates with his friend Tempco. At the hearing on its Rule 404(b) motion, the State emphasized that Dimmett's dealing offenses were charged as possession with intent to deliver and claimed that it understood that Dimmett intended to introduce this same evidence to show two users merely sharing drugs and that sharing drugs is not the same as dealing them. The trial court granted the State's motion.

[9]  When the admissibility of Tempco's testimony re-emerged during trial, the State claimed that the defense had opened the door to the evidence during its opening statement to the jury by claiming that Dimmett was a user only. The court found that the door had been opened on the issue of what Dimmett intended to do with the drugs he possessed and that Tempco's testimony was

---

[1] Indiana Evidence Rule 404(b) lists prohibited and permitted uses of evidence of other crimes, wrongs, or other acts. In assessing the admissibility of Rule 404(b) evidence, the trial court must (1) determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Indiana Evidence Rule 403. *Luke v. State*, 51 N.E.3d 401, 416 (Ind. Ct. App. 2016), *trans. denied.* Rule 403 states, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."

probative evidence of Dimmett's "intent to deliver the same class of drugs he had with him." Tr. Vol. 2 at 201.[2]

[10]    During direct examination, the State asked, "Did David Dimmett ever share any pills with you?", and Tempco responded, "Yes." *Id*. at 220. Dimmett objected but did not move to strike Tempco's affirmative response. An objection to a witness's response after its admission, unaccompanied by a motion to strike, results in waiver and will not be considered on appeal. *Lankford v. State*, 144 Ind. 428, 43 N.E. 444, 446 (1896). *See also Bowens v. State*, 481 N.E.2d 1289, 1292 (Ind. 1985) (because defendant made no motion to strike and admonish, he is foreclosed from challenging the admission of the challenged testimony on appeal). Dimmett's failure to object until after Tempco had responded was not sufficient to preserve the issue absent an accompanying motion to strike the affirmative response. The remainder of Tempco's testimony addressed his own addiction as well as the details of his friendship and drug-sharing with Dimmett and thus was merely cumulative of his statement that Dimmett had shared pills with him.

[11]    Even if error had occurred, the record includes a wealth of independent, properly admitted evidence that Dimmett possessed the drugs with intent to

---

[2] Indiana Code Section 35-48-1-11(a) defines "delivery" to include "an actual or constructive transfer from one (1) person to another of a controlled substance, whether or not there is an agency relationship." Sharing drugs has been held sufficient to support a reasonable inference of intent to deliver. *See, e.g.*, *Graham v. State*, 971 N.E.2d 713, 719 (Ind. Ct. App. 2012) (evidence that defendant shared drugs with passengers in his car held sufficient evidence of intent to deliver), *trans. denied* (2013). Remunerated or not, Dimmett supplied Tempco with the same class of illegal substances that formed the basis of his charges.

deliver. Detectives Hassler and King testified as to the sheer quantity of drugs recovered from Dimmett's pockets and noted that they had never encountered a suspect in possession of such a large quantity of pills. Based on this evidence, Detective King concluded that Dimmett was a dealer or a user-dealer. Dimmett's text messages also support a reasonable inference of dealing, as they include outgoing messages indicating that he had illegal drugs available. Detective King explained the significance of Dimmett's use of drug-name abbreviations in his text messages as well as his decision to change his phone number, as both types of behavior are common among drug dealers. The recorded jailhouse phone conversation between Dimmett and his father was also independent evidence of Dimmett's dealing. Therefore, had there been any error in admitting Tempco's testimony it would have been harmless.

## Section 2 – Dimmett is foreclosed from challenging the validity of his habitual offender guilty plea via direct appeal.

Dimmett also challenges the validity of his guilty plea to the habitual offender charge. Indiana has had "a long-standing prohibition against challenging a guilty plea by direct appeal." *Tumulty v. State*, 666 N.E.2d 394, 395 (Ind. 1996). This includes guilty pleas to habitual offender counts. *See id*. (defendant's foreclosed direct appeal concerned the factual basis for his habitual offender guilty plea). A guilty plea is "a legal act [that] brings to a close the dispute between the parties[.]" *Id*. at 396. "One consequence of a defendant's choice to plead guilty and allow judgment to be entered against him is that he is foreclosed from challenging his conviction on direct appeal." *J.W. v. State*, 113

N.E.3d 1202, 1205 (Ind. 2019) (citing *Tumulty*, 666 N.E.2d at 396). This does not leave the defendant without an avenue for challenging the validity of his guilty plea; rather, he simply is limited to raising such a challenge via post-conviction proceedings pursuant to Indiana Post-Conviction Rule 1. *Tumulty*, 666 N.E.2d at 396.

[13] Dimmett relies on *Brightman v. State* as support for his argument that he is entitled to challenge the validity of his habitual offender guilty plea on direct appeal. 758 N.E.2d 41, 44 (Ind. 2001). There, the defendant sought to withdraw his guilty plea before judgment was entered, and his direct appeal was a challenge to the denial of his motion to withdraw. *Id.* at 43-44. Here, Dimmett did not attempt to withdraw his habitual offender guilty plea before the trial court entered judgment. In fact, the court was prepared to begin the habitual offender phase of the trial when defense counsel indicated that Dimmett had decided to admit to the habitual offender charge and forgo a trial on that count. The trial court accepted Dimmett's admission and entered judgment accordingly. Thus, *Brightman* is distinguishable.

[14] Dimmett essentially claims that his general admission to the habitual offender count without a recitation of (and admission to) each of his prior unrelated felony convictions as listed in the habitual offender information is insufficient to establish a valid guilty plea. That may or may not be so, but per *Tumulty*, we are precluded from addressing the merits of his argument in this direct appeal,

and Dimmett is limited to raising such a challenge through post-conviction proceedings.[3]

## Section 3 – Dimmett has failed to meet his burden of demonstrating that his sentence is inappropriate.

[15] Dimmett asks that we review and revise his sentence pursuant to Indiana Appellate Rule 7(B), which states that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [this] Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." "Sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). When a defendant requests appellate review and revision of his sentence, we have the power to affirm or reduce the sentence. *Akard v. State*, 937 N.E.2d 811, 813 (Ind. 2010). In conducting our review, our principal role is to leaven the outliers, focusing on the length of the aggregate sentence and how it is to be served. *Bess v. State*,

---

[3] The chronological case summary ("CCS") indicates that the habitual offender count was filed on the same morning as Dimmett's initial hearing. Appellant's App. Vol. 2 at 9. We do not have a transcript of that hearing, but the trial court was required by statute to inform Dimmett of the "nature of the charge[s] against" him. Ind. Code § 35-33-7-5(6). Those charges include the contents of the habitual offender information, which lists Dimmett's prior unelated felony convictions as class C felony dealing in a controlled substance (2002), class D felony dealing in marijuana (2007), and class B felony maintaining a common nuisance (2015). The CCS also indicates for the habitual offender count, "Plea Guilty." Appellant's App. Vol. 2 at 26. In cases such as these, where there appears to be little to no need for further development of the record, it would seem more efficient to allow a resolution on direct appeal concerning the merits of a guilty plea challenge, which would obviate the need for post-conviction proceedings. However, *Tumulty* does not allow for such an exception. "We are bound by our Supreme Court's decisions, and its precedent is binding until it is changed by the Supreme Court or legislative enactment." *State v. Hardy*, 7 N.E.3d 396, 402 n.3 (Ind. Ct. App 2014).

58 N.E.3d 174, 175 (Ind. 2016); *Foutch v. State*, 53 N.E.3d 577, 580 (Ind. Ct. App. 2016). This allows for consideration of all aspects of the penal consequences imposed by the trial court in sentencing, i.e., whether it consists of executed time, probation, suspension, home detention, or placement in community corrections, and whether the sentences run concurrently or consecutively. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010). We do "not look to see whether the defendant's sentence is appropriate or if another sentence might be *more* appropriate; rather, the test is whether the sentence is 'inappropriate.'" *Foutch*, 53 N.E.3d at 581 (quoting *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied* (2014)). The defendant bears the burden of persuading this Court that his sentence meets the inappropriateness standard. *Bowman v. State*, 51 N.E.3d 1174, 1181 (Ind. 2016).

[16] In considering the nature of Dimmett's offenses, "the advisory sentence is the starting point the Legislature has selected as an appropriate sentence." *Green v. State*, 65 N.E.3d 620, 637-38 (Ind. Ct. App. 2016), *trans. denied* (2017). When determining the appropriateness of a sentence that deviates from an advisory sentence, we consider whether there is anything more or less egregious about the offense as committed by the defendant that "makes it different from the typical offense accounted for by the legislature when it set the advisory sentence." *Holloway v. State*, 950 N.E.2d 803, 807 (Ind. Ct. App. 2011).

[17] The trial court sentenced Dimmett to an aggregate thirty-eight-year executed term. The sentence comprises: two level 2 felonies, each of which, pursuant to Indiana Code Section 35-50-2-4.5, carries a sentencing range of ten to thirty

years, with a seventeen and one-half-year advisory term; two level 6 felonies, each of which, pursuant to Indiana Code Section 35-50-2-7(b), carries a sentencing range of six months to two and one-half years, with a one-year advisory term; class A and class B misdemeanor counts, for which the term may not exceed one year or 180 days, respectively, pursuant to Indiana Code Sections 35-50-3-2 and -3; and a habitual offender enhancement, pursuant to Indiana Code Section 35-50-2-8(i)(1), which provides for an additional nonsuspendible term of six to twenty years.

[18] The nature of Dimmett's offenses is not particularly out of the ordinary for drug dealing and possession offenses. That said, the common theme amongst the drug task force officers was that they were taken aback by the sheer quantity of pills recovered from Dimmett's pockets. Also significant is the fact that the officers were initially led to Dimmett while investigating the heroin overdose death of a young man to whom Dimmett had sold heroin just two days before, a fact not introduced during his jury trial but proper for consideration during his sentencing. Considering the number of felony convictions, two of which were level 2 felonies, and the fact that Dimmett's habitual offender finding accounts for nearly half his aggregate term, we do not believe that the nature of his offenses militates toward a reduced sentence.

[19] Similarly, Dimmett's character does not militate toward a shorter sentence. We conduct our review of his character by engaging in a broad consideration of his qualities. *Aslinger v. State*, 2 N.E.3d 84, 95 (Ind. Ct. App. 2014), *clarified on other grounds on reh'g*, 11 N.E.3d 571. "When considering the character of the

offender, one relevant fact is the defendant's criminal history." *Garcia v. State*, 47 N.E.3d 1249, 1251 (Ind. Ct. App. 2015), *trans. denied* (2016).

[20] Dimmett attributes his extensive criminal history to his addiction to opiates, which he developed after a 2004 auto accident. He presented character witnesses to attest to his being "compassionate," "contrite," "loving [and] nurturing," and "one of the best fathers you could ask to have." Tr. Vol. 3 at 76, 85. However, the thirty-eight-year-old Dimmett has illegally used and/or sold drugs since 1999, and the 2014 birth of his son did little to curtail his drug use and dealing. At the time of his current offenses, his son and ex-girlfriend were living in a house without electricity. His criminal record includes two class B felony convictions for dealing in controlled substances, two felony convictions for dealing in marijuana, as well as convictions for drug possession, maintaining a common nuisance, operating while intoxicated, and resisting law enforcement. We also note that at the time of sentencing, he had a pending murder charge stemming from his sale of heroin to an addict who overdosed on it. The sale occurred just a couple days before his arrest on the current charges. Aware of, yet undeterred by, the tragic results of his recent drug sale, Dimmett pitched "P"s and "A"s via text messages. His rebound rate suggests indifference to the consequences of his actions. Moreover, his previous probation revocations suggest an inability or unwillingness to respond positively to lenient sentencing options.

[21] Dimmett's expressions of remorse include a thank you to the trial court for "saving my life," expressions of disgust with drugs and their negative effect on

him and others, and assurances of future change. Tr. Vol. 3 at 93. The trial court found the sincerity of his claims "virtually impossible" to determine and simply said, "I hope you're sincere." *Id*. at 94. We too are at a loss to discern Dimmett's sincerity and therefore defer to the trial court, as uniquely situated to observe and best determine whether his remorse is genuine. *Phelps v. State*, 969 N.E.2d 1009, 1020 (Ind. Ct. App. 2012), *trans. denied*. He has failed to meet his burden of demonstrating that his sentence is inappropriate. Accordingly, we affirm.

[22] Affirmed.

Bradford, J., and Tavitas, J., concur.